HON. PIERPOINT ISHAM, ⎱ ASSISTANT JUDGES.
HON. MILO L. BENNETT, ⎰

JOB LYMAN *v.* EDWIN EDGERTON AND THE TOWNS OF WINDSOR AND WEST WINDSOR.

*Liability of towns for the acts and neglect of their town clerks.*
*Pleading. Evidence.*

The neglect of a town clerk to make the proper reference in the index to a particular record in his office will furnish no cause of action to one who never examined the records and whose want of actual knowledge respecting that particular record was in no way attributable to such a defect in the index.

21

False representations made by a town clerk in reference to the records in his office will not excuse a person from making an examination of them, or from requesting the town clerk to show them to him, so as to give him a right of action against the town for a defect in the records which would have misled him and have given him a right of action if he had examined them.

Under a declaration for the neglect of a town clerk to show a record in his office on request, and in which a request to show it is averred, the plaintiff cannot, instead of proving a request, show an excuse for not making one.

The plaintiff testified that in negotiating for the purchase of a piece of land belonging to the town clerk of W. he said to him, away from his office and upon the premises: "You are town clerk, and can tell me—is there any claim upon this property?" and that he made that inquiry to prevent going to look in the town clerk's office. *Held*, that this testimony did not tend to show a request by the plaintiff for an examination of the town records.

The statements and representations of a town clerk respecting the records in his office are not official acts; and if they are false, and the person to whom they are made is deceived and misled by them, and suffers pecuniary loss in consequence of his placing confidence in them, the town will not be liable on account of them.

Nor is the neglect of a town clerk, either innocently or fraudulently, to disclose the existence of a mortgage upon premises for the purchase of which a party is negotiating, and respecting which the town clerk has personal knowledge, a neglect of official duty for which the town is liable.

ACTION ON THE CASE. The first count in the declaration alleged that from March 1835, to March 1841, (during which period the present towns of Windsor and West Windsor constituted one town only by the name of Windsor,) the defendant, Edgerton, was town clerk of said Windsor; and that on the first day of May, 1835, the said Edgerton, being indebted to George Curtis and Edward Curtis in the sum of two thousand dollars, executed and delivered to them his promissory note for that sum; and, in order to secure its payment, on the 10th of June, 1835, the said Edwin Edgerton and Susan C. Edgerton (his wife) executed and delivered to the said George and Edward Curtis their deed of mortgage of certain lands in Windsor, which deed was left with said Edgerton for record, and was by him as town clerk, on the 11th day of June, 1835, duly recorded in the book of records of said Windsor; but that he did not then, nor did he ever make or cause to be made, nor was there ever made or kept by any one, any alphabet or index or reference pointing to said deed or record, during the period he was town clerk; and that thereafterwards, on the 4th of February, 1839, the said Edgerton bar-

gained and sold to the plaintiff, and with his said wife, Susan C. Edgerton, by their deed of that date, granted, conveyed and confirmed unto the plaintiff a portion of the same lands embraced in their mortgage deed to said George and Edward Curtis, as being free and clear from all incumbrance, excepting a lease then held by John Dunbar and William White; which deed to the plaintiff was, on the 7th day of the same February, duly recorded; that it was the duty of said Edgerton, as town clerk at the time of recording said mortgage, to have made or kept open to inspection an alphabet or index, or some reference in the form of an index, attached to the book of records wherein said mortgage was recorded, pointing to said deed or record, whereby the same might be found; *or to have disclosed to the plaintiff,* at the time of his purchase, the existence of said mortgage incumbrance, but that he did neither; that if the plaintiff had had notice of said incumbrance, he should not have made said purchase, and that he did not know of its existence until the commencement of the suit, hereafter mentioned, brought by George and Edward Curtis to foreclose their mortgage, at which time Edgerton had become wholly insolvent; that afterwards, on the 13th of October, 1845, George and Edward Curtis commenced their bill in chancery to foreclose their mortgage against Edgerton and wife, the plaintiff, and sundry other persons; and that at a session of the court of chancery held at Woodstock, on the fourth Tuesday in May, 1849, the said George and Edward Curtis obtained a final decree in their favor against the plaintiff and the other defendants in said suit for the balance due upon said mortgage note and the interest and cost of said suit, making in all the sum of three thousand four hundred and fifty-eight dollars and thirty-two cents; which sum the plaintiff together with said other defendants, was decreed to pay on or before the first Tuesday in June, 1850; and that by reason of said neglects and defaults of Edgerton, as town clerk, the plaintiff had sustained great damage, and that in order to save the lands so by him purchased from the operation of said decree, he had been compelled to pay, and had paid the sum of four thousand dollars; whereby, by force of the statutes in such case made and provided, an action had accrued to the plaintiff to demand, have and recover as well of the said Edwin Edgerton as

of the said towns of Windsor and West Windsor (formerly Windsor,) his said damages so by him sustained in consequence of said neglects and defaults of said Edgerton, town clerk aforesaid.

The subsequent counts set forth the same facts in reference to the official character of Edgerton, his mortgage to George and Edward Curtis, his conveyance to the plaintiff, the foreclosure of the Curtis mortgage, and the payment of it by the plaintiff; but the duty and conduct of Edgerton was stated as follows:

*In the second count,* that it was the duty of Edgerton, as town clerk, at the time of recording said mortgage deed to have made and kept open to inspection an alphabet or index, or some reference in the form of an index, attached to the book of records wherein said last mentioned mortgage was recorded, pointing to the record thereof, whereby the same *might be found*; and, at the time of negotiating said sale to the plaintiff, *on proper request to have shown to the plaintiff the record of said mortgage,* or upon inquiry relative to incumbrances upon the lands embraced in said deed to the plaintiff, made by the plaintiff of said Edwin Edgerton, at the time of negotiating said trade, to have disclosed to the plaintiff in some way, the fact of the existence of the mortgage incumbrance upon the lands conveyed to the plaintiff; but that the said Edgerton, town clerk as aforesaid, not regarding his said duty in those particulars, never made or kept any alphabet or index whatever of said record of said mortgage; and although the said Edgerton, town clerk as aforesaid, was inquired of by the plaintiff whether there was any incumbrance of record in his office upon the lands about which they were negotiating, and at the time of said negotiation, and at the same time the plaintiff requested said Edgerton, as such town clerk, if there was any record of any such incumbrance in his office to show him said record; yet the said Edgerton, town clerk as aforesaid, did not then, or ever, show the plaintiff the said record of said last mentioned mortgage, but when requested as aforesaid neglected and refused to show the same; nor did he disclose to the plaintiff the fact of the existence of such mortgage, but concealed the same.

*In the third count,* that it was the duty of Edgerton, as town clerk as aforesaid, at the time of recording said mortgage deed, to have made and kept open to inspection an alphabet or index, or

some reference in the form of an index, attached to the book of records wherein said last mentioned mortgage was recorded, pointing to the record thereof, whereby the same might be found; and having made and kept no such index or reference, to have refrained, at the time of negotiating and completing said last mentioned bargain and conveyance with the plaintiff, from doing any act, or making any assertion or representation to the plaintiff or in his hearing, which would tend to mislead or deceive him as to the true facts of the case in regard to incumbrances then existing of record in said office, upon the said lands about which they were negotiating, or which would tend to lull the plaintiff into a false security and prevent him from making an examination, with regard to such incumbrances, of the records in said office ; but that on that occasion the said Edgerton, town clerk as aforesaid, intending to mislead and deceive the plaintiff in the premises, and to cause him to believe that there was no such incumbrance of record in his said office as said mortgage, and thereby to prevent the plaintiff from making any examination of said records with regard thereto, and cause the plaintiff under such belief and without such examination to pay to him said consideration money and accept said deed, asserted and represented to the plaintiff that said premises about which they were negotiating and finally closed a trade, were free from all incumbrance except a certain lease then held by John Dunbar and William White ; and that fully confiding in the truth of said assertion and representation of the said Edgerton, town clerk as aforesaid, the plaintiff was thereby prevented from making an examination upon the subject of the records in said office, and was thereby induced to believe and did believe from such representation that there was in fact no incumbrance of record in said office upon said lands, except said lease; and that in consequence of such belief he was induced to and did, without further examination or inquiry, pay said purchase money and accept said deed.

*In the fourth count,* that it was the duty of Edgerton, as town clerk, at the time of negotiating said trade with the plaintiff, having kept no index or reference to the record of said mortgage deed, not to have concealed from him, but, before closing said trade, fairly and honestly to have disclosed and made known to

the plaintiff the existence of said record ; but that the said Edger-
ton, town clerk as aforesaid, at the time of negotiating and closing
said trade with the plaintiff, not regarding his duty in that respect,
but well knowing of the existence of said mortgage incumbrance,
and that the same had never been paid or discharged, and that
there was no index or reference pointing to said record thereof,
and that the plaintiff had no knowledge of said incumbrance, but
that he fully believed that there was no incumbrance upon said
last mentioned premises excepting said lease then held by said
John Dunbar and William White as aforesaid; and (in pursuance
of his said original false and fraudulent design hereinbefore in
this count set forth,) intending to deceive and defraud the plaintiff
in the premises, and induce him, in ignorance of the existence of
the said mortgage and record thereof, to make and complete said
purchase and payment; did not disclose to the plaintiff the fact of
the existence of said mortgage deed or record thereof, but falsely
and fraudulently concealed from him the same ; and was thereby
enabled to and did induce the plaintiff, in ignorance of said mort-
gage deed and of the said record thereof, to make and complete
said purchase.

Plea, the general issue; trial by jury, May Term, 1855, —
UNDERWOOD, J., presiding.

On trial the plaintiff gave in evidence certified copies from the
records of the town of Windsor, showing that Edgerton was town
clerk of that town during the years 1835, 1836, 1837 and 1838,
and until March, 1839 ; also a copy of a mortgage deed from
Edgerton and his wife to George Curtis and Edward Curtis,
dated June 10th, 1835 ; also a deed from Edgerton and his wife
to the plaintiff, dated February 4th, 1839 ; and it was conceded,
that the premises conveyed by the said last mentioned deed were
a part of the same premises described in the mortgage deed.   The
plaintiff called as a witness Preston Merrifield, the present town
clerk of the town of Windsor, who produced Vol. 16 of the
records of deeds of the former town of Windsor, from which it
appeared that the mortgage deed from Edgerton and his wife to
George and Edward Curtis, was recorded at length and duly cer-
tified on pages 520 and 521 of said Vol. 16, and also that said
deed was entered in the index of said Vol. 16, but that said last

entry was not in the handwriting of said Edgerton, but was in the handwriting of Caleb Kendall, who was elected town clerk in March, 1841 ; and the plaintiff introduced the deposition of George Curtis, which tended to show that the entry was not made in the index until as late as 1844. The plaintiff also gave in evidence the record of a decree in chancery upon a bill of foreclosure, brought by George and Edward Curtis against the plaintiff and others, upon the mortgage above mentioned, and proved that he paid, in satisfaction of his proportion of the sum found due by said decree, three thousand and ninety-five dollars and thirty-two cents.

The plaintiff was sworn as a witness, and testified that in the latter part of January, 1839, (there having been conversation previously between himself and Edgerton, about Edgerton's selling to him the premises described in the deed from Edgerton to himself,) he went to Windsor and saw Edgerton, and went on to the premises, a little north of the village of Windsor; that a lease was mentioned which Edgerton had given to Dunbar and White; that White was then living on the premises; that they (the plaintiff and Edgerton) went into the house and examined it from garret to cellar; that the lease of Dunbar and White was given for three years, and that this time was the latter part of the second year; that after looking at the house, they (the plaintiff and Edgerton) went out and looked at the out buildings ; that they then passed on to the land which laid west of the buildings ; that as they passed westerly, Edgerton pointed out the line to him, and named the several adjacent occupants ; that as they approached the westerly part of the land, he (the plaintiff) inquired the number of acres in the premises; that Edgerton replied to him, that it was called thirty-three acres, and that he (Edgerton) presumed it would amount to that, for " General Curtis had always been careful to get good measure, or have good measure ; " that he (the plaintiff) then said to Edgerton : " You are town clerk and can tell me—is there any claim upon this property ? " that Edgerton replied to this : " No, there is none ; I shall give you a warranty deed ; " that the price of the premises had been named by Edgerton as five thousand dollars ; that he (the plaintiff) told Edgerton he should want a short time to consider of it, and that he (the plaintiff) would let him

know in a few days, and that Edgerton replied, " Very well; " that some few days afterwards the trade was completed and the deed executed and delivered ; that as a part of the bargain, Dunbar and White were to remain in possession of the premises until April 1st, and then the plaintiff was to have possession of the premises and receive from Dunbar and White the rent for the then remaining year of their lease ; that the deed was delivered not more than a week after the conversation with Edgerton upon the premises, and that he (the plaintiff) did not see Edgerton in the mean time. The plaintiff further testified, that he had no knowledge of any incumbrance upon the premises, and no suspicion of any, until the bill in chancery was issued against him ; that he gave five thousand dollars for the premises, and that he then thought that was the full value of the premises ; that no part of the money paid by him had ever been refunded ; that he should not have traded if he had known of the incumbrance to the Curtises ; that he considered he was giving the full value of the premises, free and clear ; that he should not have taken Edgerton's responsibility for the amount ; that he knew that at the time, that Edgerton was reputed to be in comfortable circumstances, but did not know much about it. The plaintiff further testified, that at the November Term, 1845, of the Windsor county court, Edgerton was in the plaintiff's office at Woodstock, and that he asked Edgerton, " why he had not let him (the plaintiff) know of the incumbrance to the to the Curtises," and that Edgerton replied, " he thought it not necessary, for he supposed he could remove it any day," that the plaintiff then urged Edgerton to get the Curtises quit-claim of the premises, and that Edgerton said he was not able to do it, that he had not the means. The plaintiff further testified, that since that time, November Term, 1845, Edgerton had been considered as low in point of property, and that George Curtis and Edward Curtis were brothers of Edgerton's wife.

Upon cross-examination the plaintiff stated, that he did not go to the town clerk's office on the day he had the conversation with Edgerton at Windsor, as above stated, and that he made no examination of the records or index to the records in the town clerk's office, previous to purchasing the premises, and that he had stated in his testimony in chief all the conversation which took

place between himself and Edgerton about the title at the time he made the purchase. The plaintiff also testified (in connection with the above,) that he did not then know where the town clerk's office was kept, but supposed it was in Edgerton's office; that he did not go to the office at all; that he should have considered it an imposition upon Edgerton had he proposed going there to examine the records, after what Edgerton had told him; that he (the plaintiff) did not know of any incumbrance, and made the inquiries of Edgerton, before stated, as town clerk, to prevent going to look in the town clerk's office; that he knew that General Curtis had owned the premises, and had deceased and left children, Mrs. Edgerton and others; and that he made the inquiry to ascertain whether the Curtis heirs or any other person, had any claim upon the premises.

The defendants gave evidence tending to prove that Edgerton, at the time the plaintiff purchased of him, was solvent and responsible in point of property, and was abundantly able to meet all his engagements, and that he was generally reputed worth from ten thousand to twenty-five thousand dollars.

The defendants also gave evidence tending to prove that no such conversation was had between the plaintiff and Edgerton upon the occasion of the purchase of said premises, as was testified to by the plaintiff; that the only inquiry made at that time by the plaintiff as to the title to said premises, was whether the estate of General Curtis (who had previously owned the premises in question, and whose daughter was said Edgerton's wife,) had been divided among the heirs; and that the answer made by said Edgerton was that it had been so divided; and that this was all which was said in relation to the title to said property; and that the plaintiff made no inquiry of Edgerton as to there being any incumbrance upon the premises, and said nothing about Edgerton's being town clerk; and that he was not told by said Edgerton that said premises were free from incumbrances. The defendants gave further testimony, tending to prove that the omission by Edgerton to index the mortgage deed to the Curtises was not intentional, nor with a view to deceive or defraud the plaintiff, or any other person, but was wholly accidental and unintentional;

and that said Edgerton did not know that said mortgage was not indexed, until after the bill of foreclosure had been commenced.

The court charged the jury, (among other things not excepted to,) that if they found from the testimony, that, on the occasion of negotiating their trade, the plaintiff inquired of Edgerton, as town clerk, and as having the custody of the town records, and as being supposed to know (under the circumstance,) whether any incumbrance existed of record on said land, whether there was any claim on said land, (meaning incumbrances,) and Edgerton so understood him, and that he (Edgerton) understood he was relied upon for such information as is usually obtained from the records themselves, and that, instead of referring the plaintiff to the records or declining to answer away from his office, (which he might have done,) took it upon himself to give the desired information, and told the plaintiff that there was no claim or incumbrance on the premises, when in fact there was, and Edgerton then knew it and remembered it, then the plaintiff was entitled to recover, provided the jury should find the other facts proved, (which the plaintiff's testimony tended to show,) and provided, further, they should find that the plaintiff concluded the trade, relying on that information so given as being true, and that the plaintiff would not have concluded the trade had he been informed of the incumbrance. In connection with the foregoing, (in answer to requests of counsel,) the court further instructed the jury as to the omission to index, inasmuch as the plaintiff never examined the records, and was not misled by that omission, that they might dismiss that from the case, and in their deliberations treat the case the same as if the index had been duly made; and as to the omission of the plaintiff to make examination of the records before closing the trade, that if Edgerton gave the false information, in the manner above explained to them, and the jury believed that the plaintiff, relying upon it, was thrown off his guard, and therefore omitted making such examination, that the want of such examination would not preclude the plaintiff from a recovery; and that whether Edgerton gave such false information with a fraudulent intent or not was wholly immaterial; also that the fact of the town clerk being also the vendor should make no

difference, except upon the question of probability of his knowing and recollecting the incumbrance at the time of being inquired of; and that, for all other purposes, the jury should consider it in the same light as if the plaintiff had been purchasing of some other person, and the same inquiries had been made of Edgerton, as town clerk, and the same answer given as in this case; also, that the fact of the application to the town clerk for information not having been made in the town clerk's office would not vary the case; that if made elsewhere, the town clerk might not be bound to answer, he might not remember, and might decline doing or saying anything about it away from his office, but that if, without referring the parties to the records or declining to answer, he takes it upon himself to give the desired information away from his office, and gives it untruly, knowing and remembering at the time that it was not true, it would amount to the same thing in law, as if done in his office.

Upon the several counts in the plaintiff's declaration, the court told the jury that as the defendants had not demurred, but taken issue upon them, no question as to the sufficiency in law of those counts could be considered on this trial, but that the jury would decide upon the testimony, whether the facts alleged in those counts were or were not proved; that without saying that either count was sustained by the evidence, the court thought that the testimony had a legal tendency to prove each and all of them, but it was for the jury to determine whether either, and if so, which of the counts were proved and which not, and return their verdict accordingly. To this charge the defendants excepted.

The jury returned a verdict against the defendants upon each count of the declaration, and assessed the damages.

After verdict, the defendants filed their motion in arrest of judgment for the insufficiency of the plaintiff's declaration, which motion the court overruled, and rendered judgment for the plaintiff; to which the defendants also excepted.

*Washburn & Marsh* and *W. Courier*, for the defendants.

I. *Judgment should be arrested* upon the first, third and fourth counts of the declaration. The action is brought for the alleged *official* default of Edgerton; and no recovery can be had against

him except upon allegations which, if proved, will entitle the plaintiff to recover against the *town*.

1. *In the first count* the breach is that Edgerton *made no index,* and *did not disclose to the plaintiff the existence of the mortgage.* The *omission to index* has been held to be a breach of official duty ; but the want of an averment that an examination of the index or of the records was made, or attempted, renders this count fatally defective; *Hunter* v. *Windsor,* 24 Vt. 335 ; *Curtis* v. *Lyman,* 24 Vt. 341. But if this defect would be cured by verdict the case shows that, in fact, such examination was not made. So *the omission to disclose the existence of the mortgage,* when connected with the residue of the count, must be treated the same as though the mortgage were indexed. The duty and the default, if . any existed, were *personal,* and not official.

2. *In the third count* the breach is that Edgerton, intending to prevent the plaintiff from examining the records, *represented that the premises were free from incumbrance,* and that thereby the plaintiff was prevented from making such examination. The basis of recovery upon this count must be the *false affirmation* of Edgerton, made *without inquiry* by the plaintiff. The omission to index not having contributed to the injury, the alleged false representations are not strengthened by being coupled with it.

The only duties imposed upon a town clerk by statute are to *record deeds, to give copies, and to exhibit on proper request records and files in his office.* Slade's St. 415. And the legal principle which will allow a recovery upon this count must be one applicable to the same extent to a case where the town clerk and the vendor of the estate are not the same person ; and it must be this, that the town are liable if the town clerk *volunteer* to assure a purchaser that the estate is free from incumbrance when it is in fact subject to mortgage. The *intent* with which this is done is immaterial ; for the intent is unknown to the purchaser, and does not influence him ; and the consequent omission to examine the records would just as much follow if the incorrect information were the result of defect of memory in the town clerk as if it were intended to prevent such examination. It must result, then, that the town are liable for the consequences of every erroneous statement made by the town clerk as to the state of the title to

land in town, though made without inquiry. If not, then the right of recovery depends upon the *fraudulent intent.* But that is a matter *personal* to the town clerk, and not *official.* The statute imposes a duty upon the plaintiff to make reasonable request for the records and files, and renders the town liable for the omission by the town clerk of the performance of a positive act, susceptible of distinct proof. The count in this view assumes that the plaintiff may omit all inquiry and yet hold the town liable for the existence in the mind of the town clerk of a fraudulent intent susceptible of no proof except circumstantially and by inference.

A certificate in writing that land has not been conveyed, that is, that there is no deed or mortgage of it on record, signed by the town clerk with his official signature, is not received as evidence, for the reason that it is no part of his *official duty* to give such certificate; *Hill* v. *Bellows,* 15 Vt. 727. But if this count be sustained the town is made responsible for the falsity of a certificate given by their *officer,* which courts will not receive, because it is not within the scope of his *official* duties. If the town clerk is to be considered the *agent* of the town, they are neither bound by, nor liable for any of his acts without the sphere of his employment; *Huckman* v. *Fernie,* 3 M. & W. 517. But his only employment was *to record, to give copies,* and *to exhibit records.* And when the plaintiff relied upon the truth of the *verbal representations* made by the town clerk, he put confidence in the *man,* and not in the *officer.* And though he reposed the more confidence in him *because* he was an officer, that had reference solely to his means of knowledge. But the town clerk is an independent public officer, acting under certain laws, and having no power except he act in conformity with them; and if he be the agent of the town in any sense he is one acting under special instructions from which he cannot depart, beyond which he cannot bind the town, and of which those dealing with him are bound to take notice; *Smith* v. *City of N. Y.,* 4 Sandf. Sup. Ct. 221; *Hickok* v. *Plattsburgh,* 15 Barb. 427; *Petersburgh* v. *Maxpin,* 14 Ill. 194; *Argyle* v. *Divinell,* 29 Maine 29; *N. H. Savings Bank* v. *Varnum,* 1 Met. 36; 1 Am. Lead. Cas. 544.

And the powers thus conferred by law are strictly construed, selectmen under a general power to manage the prudential affairs

of a town have no authority to release, without consideration, a cause of action in favor of the town; *Carlton* v. *Bath*, 2 Fost. 559; nor to release the interest of a witness; *Ib.; Angell* v. *Pownal*, 3 Vt. 461; *Yaran* v. *Randolph*, 6 Vt. 369; nor to receive the money of the town and execute discharges therefor; *Middlebury* v. *Rood*, 7 Vt. 125; nor, in Massachusetts, to make a contract in behalf of the town for the hiring of a building for the purpose of holding town meetings in it; *Goff* v. *Rehoboth*, 12 Met. 26. And, under the general power given to the town clerk to record, the registry of instruments not specified in the statute is ineffectual, and certified copies of such records are inadmissible in evidence, for the reason that the act of the town clerk in making such records and certifying copies of them is not official; *St. Albans* v. *Gibbs*, Brayt. 76; *Bush* v. *Van Ness*, 12 Vt. 92; *Isham* v. *Ben. Iron Co.*, 19 Vt. 230; *Pope* v. *Henry*, 24 Vt. 564. And if the act of an officer of a municipal corporation be unauthorized, the corporation is not responsible, though done *colore officii*; *Thayer* v. *Boston*, 19 Pick. 516; Ang. & Am. on Corp. 250.

3. *In the fourth count* the breach is that Edgerton *omitted to index the mortgage, with the fraudulent intent thereby to obtain credit, and that he did not disclose the existence of the mortgage, but fraudulently concealed it.* This does not vary from the first count, except in the allegation of *motive.* If the omission to index were not the cause of the injury sustained by the plaintiff by reason of the plaintiff's omission to examine the records, the motives of Edgerton in omitting to index are immaterial. And the omission to disclose was a merely personal matter, which is made none the more official by the intent.

II. Upon all the proof in the case upon the part of the plaintiff the defendants were entitled to a verdict upon the second count. This count has been construed by the court as averring " a timely and reasonable request" on the part of the plaintiff to Edgerton to show the record of any incumbrance existing upon the land, if any there were; *Lyman* v. *Windsor*, 24 Vt. 581; and is based upon that clause of the statute which imposes upon the town clerk the duty of showing, on proper request, any record or file in his office; Slade's St. 415. This implies a distinct and direct request to the town clerk to produce a specific record. The proof is, that

the plaintiff said to Edgerton : " *You are town clerk and can tell me — is there any claim upon this property ?*" and that Edgerton replied, " *No, there is none ; I shall give you a warrantee deed.*"

This is an entire departure from the count. The count avers not merely an inquiry whether there was an incumbrance ·of record, but that " at the same time the plaintiff requested said Edgerton, as such town clerk, if there was any record of any such incumbrance in his office, *to show it ; "* and the ·omission *to show the record* is the only breach of duty within the statute which the count contains. Upon the proof there is no pretence of any request to show any record, or that allusion was made to any record.

The statute, guarding against any possible dishonesty of town clerks, has provided that the purchaser of land may *inspect the record ;* and if such inspection is denied to him, or, upon inspection, he is deceived, without fault upon his part, has given a remedy against the town. This inspection, or attempt to inspect, becomes a duty · upon the purchaser precedent to his right of recovery against the town ; and if its omission contribute to the injury he is without redress. The plaintiff has *averred a performance* of this duty ; but instead of proving the averment he proves an *inquiry* of the town clerk as to the existence of incumbrances, and a reliance upon the personal honesty of the town clerk and the accuracy of his recollection, without an attempt at inspection. And the court in the charge to the jury, instead of putting to them to find that Edgerton understood he was requested *to show the record*, make the town liable, if Edgerton " *understood he was relied upon for such information as is usually obtained from the records themselves,*" and " *took it upon himself to give the desired information,*" and gave it knowingly false.

The testimony, then, only proves, and the jury have been instructed only to find *false representations made by Edgerton as town clerk.*

But false representations alone, even upon inquiry of Edgerton " as town clerk," are not averred in the second count ; and therefore evidence which proves only such false representations, on official inquiry, is variant from the second count and does not sustain it.

*E. Hutchinson* and *Converse & Barrett,* for the plaintiff.

Where there are good and bad counts in a declaration, and a general verdict, and it appears in any way that no damages were given but such as the plaintiff would be entitled to upon the good counts alone, the verdict will be applied to the good counts, and judgment will not be arrested ; *Whitcomb* v. *Wolcott,* 21 Vt. 377 ; 1 Ch. Pl. 395 ; 2 Saund. 171, and note 1.

The second count has been adjudged sufficient; 24 Vt. 580 – 1 ; and this court will not entertain the same question again. If the verdict upon this count was rendered *upon competent evidence,* having a *legal tendency* to prove its allegations, (or so many thereof as would constitute a right of action in the plaintiff, even though the same count may contain other allegations as to which no testimony was given,) *and under proper instructions* from the court ; the verdict must stand and judgment be affirmed.

All evidence will be regarded as *competent* by this court, to the admission of which no objection was made on trial. No objection was made to the admissibility of any portion of the plaintiff's evidence. The verdict upon the count was, therefore, rendered upon *competent* or *admissible* testimony.

The controverted allegations peculiar to the second count are, ( in substance) that it was Edgerton's duty, as town clerk, at the time of negotiating the trade, " *on proper request to have shown the plaintiff the record"* of the *incumbrance ; or, upon inquiry relative to incumbrances* made at the same time by the plaintiff of Edgerton, *to have disclosed to the plaintiff the fact of the incumbrance ;* but that, " although Edgerton, town clerk as aforesaid, was inquired of by the plaintiff whether there was any incumbrance of record in his office upon the lands about which they were negotiating the trade, and at the time of said negotiation ; and at the same time the plaintiff *requested said Edgerton, as such town clerk, if there was any record of any such incumbrance in his office, to show him said record ;"* " *yet the said Edgerton, town clerk as aforesaid,* did not then, or ever, show the plaintiff the record of said mortgage, but, when requested as aforesaid, *neglected and refused to show the same ; nor did he disclose to the plaintiff the fact of the existence of such mortgage, but concealed the same.* That the plaintiff's testimony detailed in the exceptions *tended,*

(and strongly too,) to substantiate the foregoing, as well as all the other allegations of the second count, upon any ordinary construction of allegations and testimony, would seem to be beyond a doubt. What is the proof? That before concluding the trade, whilst the plaintiff was upon the land with Edgerton, in Windsor, a little out of the village, (in which Edgerton resided and kept his office,) after having examined the buildings and boundaries and talked over everything else, the plaintiff put the question to Edgerton direct: "*You are town clerk and can tell me — is there any claim upon this property?* " By what hair-splitting, logic-chopping process of reasoning could Edgerton be said to have understood that question as anything more or less than, or a millionth part of a *point* different from, a plain, *point-blank request*, made to him *as town clerk*, if there was any record in his office of any incumbrance on the premises, to *show*, or *make it known* to him. For, as applied to this subject, the terms are synonymous. It is true that the allegations do not *literally* follow *the words* of the proof. But they are set forth according to their *legal effect*, which is generally *conceded* to be good pleading. In like manner, ( had the form of action admitted of a special plea,) proof that Edgerton in answer *informed* the plaintiff of the incumbrance without going near his records, would be held as, in legal effect, supporting an allegation that *he did show the record;* not literally, but in a sense to answer every purpose contemplated by the statute ; that is, of *making known* to the applicant the fact of the incumbrance, which is all that the record would have done had it been exhibited.

But if the proof was not, in law, of a request to show the record, it certainly sustains the other allegation of inquiry relative to incumbrances, which it was equally his duty as town clerk to answer correctly, if at all. For under the charge the jury must have found that the term " claim " (used by the plaintiff) was understood by both to mean *incumbrance*. Can it be that a town clerk's duties are to be limited down to such only as are specifically and in detail named in the statute, and that the records must be inquired for in the precise words of the statutory enactments, or they are forever to remain "*sealed books*" for all purposes of *actual* notice to all persons but the town clerk and his particular friends? that false information intentionally given by the town

22

clerk as to the record title in his office is to be regarded in law as merely *personal*, and not official ?

The law makes records of deeds constructive notice to all mankind of their contents, and against which want of notice *in fact* cannot be averred. The town clerk is made the *sole keeper* of the records, and through him alone can access be had to them or their contents. One about to purchase applies to him, makes known his object, and asks him, as town clerk, to inform him whether there is any incumbrance on the land. The clerk, without referring him to the records, professes to know and remember all about it, and tells him there is none, when he then well knew that there was. The applicant goes away satisfied, concludes the purchase, and in the end loses his land. Was it not as much the town clerk's duty to *make known* the incumbrance when thus inquired of as it was to *make the record* of the incumbrance ? And was not his neglect in the one case as much *official* as it would have been in the other ? His official duty did not terminate when he had *recorded* the incumbrance. The still further duty rested upon him ( in order faithfully to execute the duties of his office) to so *keep and conduct* with that record that, if all the world should not receive *actual* notice of it, it should be *their* fault, and *not his.* The neglect so to do is an official neglect, for which both he and the town are made liable by statute.

The only question of *law* arising upon the *first count* is, *was it the official duty of Edgerton under the circumstances to have disclosed the incumbrance ?*

If it be held that the town clerk *might* remain silent *officially,* in cases where he *had alphabeted* the record upon the ground of having furnished all the facilities for guarding the public against such impositions as to the state of the record title which the law requires, *yet, not* having done so, it was his official duty to have *disclosed the incumbrance.* Not having made an alphabet or index pointing to the record according to statute, it was his duty to have acted as *index himself,* by pointing out the record to all interested to know of it, so far as came to his knowledge. An obligation rests upon every man, in case of neglect of a known duty, to repair and atone for the omission at the earliest moment, and in the most effectual manner ; and if the neglect is of an *official duty* the

obligation to repair (as far as possible) is *equally official* in its character.

Should the plaintiff fail to establish his *second count* by a preponderance of testimony ; and also fail upon his *first count* on the ground that he made no examination of the records before purchasing ; the *third count* alleges (in short) that he was prevented from making such examination by Edgerton's false representations made by him as town clerk, with the intent to deceive him as to the title of record in his office, and prevent his examining the records ; that he was deceived, traded accordingly, and *thereby* sustained his damage.

Is the case varied because it is not averred that it was upon " *inquiry?* " In other words, is this count bad in law, on motion in arrest, for want of that allegation ? To so hold would lead to results hardly compatible with a *just* construction of the duties of a public officer. It would make the character of the acts complained of to depend *not upon their intrinsic merit or demerit,* but wholly upon *the mode and manner in which the subject was introduced.*

As to the *fourth count,* we insist that its allegations, if proved and under proper instructions, entitle the plaintiff to a verdict. If the court think the instructions wrong upon this count, they will (so far only) set aside the verdict.

The opinion of the court was delivered by

Isham, J. The questions in this case arise upon a motion in arrest of judgment for the insufficiency of the declaration, and upon exceptions allowed upon the trial of the case before the jury. The second count, on a former hearing of the case, was adjudged sufficient upon general demurrer, and is now regarded as sufficient upon this motion in arrest. If the plaintiff is entitled to an affirmance of the judgment on the second count, the motion in arrest is obviated ; but if otherwise, the questions in the case arise on that motion, whether the facts stated in either of the other counts are sufficient to sustain the action.

The action is brought on that provision of the statute which renders towns liable for damages which have accrued to any person by reason of the neglect or default of their town clerk. It

appears from the case that Edgerton was town clerk of Windsor, previous to its division by an act of the legislature, during the year 1835, and until March, 1839. In February, 1839, Edgerton and his wife conveyed to the plaintiff the premises referred to in the declaration by warranty deed. The same premises, it also appears, were included in a mortgage deed previously executed by them to George and Edward Curtis, which was recorded at length upon the town records; but no index was made to that record until long after the sale of the premises to the plaintiff. · The complaint in the second count is that Edgerton neglected, while town clerk, to make an index to the record of that mortgage, and that he also, after a request had been made, neglected to show the record of it or to disclose to the plaintiff its existence. In the case of *Curtis* v. *Lyman*, 24 Vt. 338, it was held, that this mortgage deed was sufficiently recorded to protect the title of the mortgagees, and that the plaintiff was charged with constructive notice of its existence, although in fact he had no actual knowledge of it until long after his purchase of the premises. In the cases of *Hunter* v. *Windsor*, 24 Vt. 327, and *Lyman* v. *Windsor*, 24 Vt. 580, it was held that it was the official duty of the town clerk to provide an index to that record, and to keep the same for inspection and use; and that, on request being made for that purpose, it was his duty also to submit the books of record in his office, and the index belonging to them, to the plaintiff's examination; and that for any neglect in these particulars, the towns were responsible.

But to sustain an action of this character, it must appear that the neglect of the town clerk was the cause of the injury, and that the want of such an index, or his neglect to submit the records of his office to the plaintiff's examination, is the reason why actual knowledge of the existence of the mortgage was not obtained. There is no ground of complaint for any neglect of official duty by the town clerk when that neglect in no way contributed to the injury which the plaintiff has sustained. The principle applies to this case as well as to others, that the injury must not result from the plaintiff's negligence or want of proper diligence. In relation to the neglect of the town clerk to make an index to that mortgage deed, the court properly charged the jury that, "as the plaintiff never examined the records, and was not

misled by that omission, they might dismiss that from the case, and in their deliberations treat the case the same as if the index had been duly made." The plaintiff having taken no exceptions to that charge that rule must be regarded as binding. The declaration contains no averment, nor was there any pretense that an examination of the records was made or attempted. It cannot be said, therefore, that the want of an index was the reason why the plaintiff did not obtain actual knowledge that such a mortgage had been given. For that reason the plaintiff can make no claim for that neglect of official duty.

In relation to the neglect of Edgerton to submit to the plaintiff's examination the records in his office, it may be observed that such a request is averred in this count; and if there had been any testimony proving that averment, the plaintiff would have been entitled to recover in this action. It does not appear from the case that the question, whether a request was made to examine the records, was a matter submitted to the jury. The case, on all the counts, was made to rest on the false representations of Edgerton that the premises were free from incumbrances; for the court instructed the jury that if the plaintiff omitted to make that examination of the records in consequence of the false information given by Edgerton, the want of such an examination would not preclude the plaintiff from a recovery. The effect of that charge is that, if those representations were made by Edgerton, it will dispense with the necessity of proving an examination of the records or of making any request for that purpose. But we think that doctrine cannot be sustained. So far as the towns of Windsor and West Windsor are concerned, no act of Edgerton will excuse the plaintiff from using those facilities, or complying with those requirements for which express provisions are made by statute; and particularly it is necessary, in this case to prove such a request, as such is the averment in this count. It is not competent to prove an excuse for not making such a request under an averment that an actual request was made.

But if we were to regard that question as submitted to the jury, and as now properly before us, the difficulty in the case is not avoided, as we think there is no evidence stated in the case tending to prove that, for the examination of the town records, a

request was ever made by the plaintiff previous to his purchase of the premises. It is insisted that the case shows that such a request was made, and that the observation made by the plaintiff to Edgerton, during the examination of the premises, that "You are town clerk and can tell me—is there any claim upon this property?" is evidence tending to prove that fact. But we do not feel at liberty to put that construction upon that inquiry. It was obviously not so intended by the plaintiff, nor could it have been so understood by Edgerton. The testimony of the plaintiff, given on the trial of this case before the jury which is detailed in the exceptions, has, we think, put this matter at rest. He says, that "he did not go to the office at all," that "he should have considered it an imposition upon Edgerton *had he proposed going there to examine the records,* and that he made the inquiry of him whether there was any claim upon the property *to prevent going to look in the town clerk's office."* The plaintiff did not consider that he had made such a request and that the request had been denied; and we should not regard that language as evidence of a fact which the plaintiff himself disclaims. It is an obvious case, in which not only a request, but an actual examination of the records was dispensed with, in the confidence placed by the plaintiff in the representations of Edgerton that the premises were free from incumbrances. It is true that the plaintiff has been injured in having been compelled to pay the Curtis mortgage; but that injury did not accrue from the neglect of the town clerk to make an index to that mortgage deed, nor, upon request, from the neglect of the town clerk to produce the records in his office for examination. On this count in the declaration, therefore, we think the plaintiff cannot recover, as he has failed to prove its material averments.

The questions on the motion in arrest of judgment arise upon the first, third and fourth counts. We are to regard the facts stated in each of these counts as having been found by the jury on competent testimony. The third count, in common with all the others, contains the averment that Edgerton neglected to make an index to the record of the Curtis mortgage. It is then stated that, with a view to mislead the plaintiff, and thereby prevent him from making an examination of the records in his office, he represented

that the premises were free from all incumbrances except a lease to Dunbar and White; and that, in consequence of that repre-sentation, the plaintiff was induced to and did purchase the premises without any further examination or inquiry. There is no averment in this count that there was any request by the plain-tiff, or refusal by the town clerk, to submit the records in his office to the plaintiff's inspection. The fact that no such examination was made or requested, places the plaintiff in the same situation he would occupy if the Curtis mortgage had been recorded and an index to it duly made. The only inquiry, therefore, on this count, arises, whether the towns of Windsor and West Windsor are liable to the plaintiff, in this action, for those false representations of the town clerk, when in reliance upon them no examination of the records was made, in consequence of which his injury has been sustained.

The statute provides that towns shall be liable to make good all damages *which shall accrue by reason of the neglect or default of any town clerk,* &c. To ascertain whether there has been any such neglect or default, it becomes material to ascertain the duties which are imposed upon the town clerk by law; for it is only for the neglect to perform official duties, or such as the statute requires, that towns are liable; *Hathaway* v. *Goodrich,* 5 Vt. 66; *Davis* v. *Clements,* 2 N. H. 390; *People* v. *Schuyler,* 5 Barb. S. C. 168. The statute (Slade's Comp. 414,) provides that town clerks shall provide books, with an index for registering deeds and other evidences respecting titles to lands, and also for record-ing the proceedings of town meetings and such other acts and things as are by law required to be recorded; and it is made his duty to record all such matters, to furnish copies of the same, duly attested by him, and on proper request, to show the records and files in his office. These are the specific duties enumerated by statute, so far as they are material to be now considered. It will be observed that the powers and duties of the town clerk are con-fined to making truthful records of all matters left with him which by law are to be recorded, to duly exemplify copies of the same, and to keep and preserve them for public use and inspection.

The intention of the legislature and the policy of the act are obvious. It was their intention to provide a feasible method,

which should be certain, and as solemn in its character as record evidence, by which all persons who are or may be interested in the title of real estate, may ascertain its true condition and the incumbrances resting upon it. These records alone, so far as the liability of towns is concerned, are made the organs of information in relation to such titles ; and purchasers, as well as those who are making advances upon its security, are bound to consult those records for their information, and not the man who, for the time being, holds the office of town clerk. It is the manner in which those records are kept and preserved which determines and measures the liability of towns. If, for the protection and security of towns and persons interested, the law has provided certain facilities, in the use of which actual knowledge of the title to real estate and its incumbrances may be obtained, it is reasonable to require that those facilities shall be used for that purpose, and that no liability shall rest upon the town if the party injured has neglected to improve them, or has relied for his security upon the covenants in his deed, or the representations of the town clerk, or upon any source of information other than those records. If the plaintiff in this case had examined the records, and for the want of an index had failed in obtaining actual knowledge of the existence of the Curtis mortgage, or if he had been refused the examination of them, the town would have been clearly liable. There would then have been a neglect of official duty ; the neglect of duties the performance of which was required by law. But in no case are the *statements and representations of a town clerk* regarded as official acts for which towns are liable, nor are they regarded as any evidence of what does or does not appear upon the records of the town.

In the case of *Hill* v. *Bellows*, 15 Vt. 727, it was held that a certificate of a town clerk that a person had not conveyed land is not evidence of that fact. WILLIAMS, CH. J., observed, " The certificate of the town clerk is evidence of what is on record, but he is not a certifying officer as to what does not appear of record." The certificate was not evidence in that case, because it was not an official act ; and if not an official act it is not a matter for which in any way towns can be made liable. The intent with which such certificates or statements are made, does not affect the case.

A fraudulent intent will not render an act official, which otherwise would not be so. In *Oakes* v. *Hill*, 14 Pick. 448, it was observed that "recording officers may make and verify copies of their records, and, in doing so, act under the obligation of their oath of office. Of the verity of such copies their certificates are evidence. *But it is no part of their duty to certify facts, nor can their certificates be received as evidence of such facts.*" If their certificates are not official acts, much less will be their verbal representations. In 1 Greenl. Ev., sec. 498, it is said, " if the person was bound to record the fact, then the proper evidence is a copy of the record, duly authenticated: But as to matters which he is not bound to record, *his certificate, being extra official,* is merely the statement of a private person, and will, therefore be rejected; *Jackson* v. *Miller*, 6 Cow. 751, 261 ; *Carter* v. *Stokes*, 1 M. & S. 599. The statute does not make it the duty of town clerks to answer such interrogatories, nor are they, so far as the liability of towns is concerned, authorized to make any such representations or statements; it is no part of their official duty. They must, therefore, be regarded as the statements or representations of a private person, and for which towns are not responsible. We think the facts stated in this count are insufficient to sustain this action.

The first and fourth counts are for the reasons which have been stated in connection with the third count, regarded insufficient. The first count contains the averment that Edgerton neglected to disclose to the plaintiff the existence of the mortgage previous to the purchase of the premises ; and that is the gravamen of the count. The fourth count is similar to the first, with the additional allegation that the neglect to make that disclosure was with a fraudulent intent. If the representations of the town clerk cannot be regarded as official acts, his neglect to disclose facts within his knowledge cannot be regarded as such. The difficulty in sustaining these counts arises from the consideration that towns are liable only for some neglect or default in keeping the town records, and not for any representations of the town clerk, nor for his neglect to disclose facts within his personal knowledge. If the town clerk has made such representations, or has neglected to make such disclosures, they are personal considerations, the same as if done by any private individual; and for such matters towns are not

responsible. Whether an action could be sustained against Edgerton for these statements, or for a fraudulent neglect to disclose the existence of that mortgage, is not a question arising in the case. It is sufficient to observe that the statute has imposed no such liability on towns. The fact that Edgerton was both grantor of the premises and town clerk we have not regarded as of any importance in the case, or as in any way affecting the legal principles involved in it. If that circumstance has any effect it should have led the plaintiff to place less confidence in such representations, and to the exercise of greater diligence in the examination of the records, and in the use of all those facilities which the law has provided for his security, as well as for the security of towns.

The result is that the judgment of the county court must be reversed, and a new trial granted.