Hunter *v.* Windsor and West Windsor.

*— ◆ —*

DAVID HUNTER *v.* WINDSOR AND WEST WINDSOR.

*Liability of towns for the neglect of their town clerks. Declaration. Demurrer.*

It is the duty of the town clerk to provide an *alphabet* or *index*, for the book of record used for recording evidences respecting titles to lands or real estate, and to keep and preserve the same for inspection and use, with the same truthfulness and care, that he is required to exercise in keeping the books of record, and when an injury has been sustained by any one, by reason of neglect in this respect, the town is liable under the statute.

But to enable a party to sue for such neglect, it must appear that the neglect to keep such an *alphabet* or *index*, was the cause of the damage he has sustained.

Where the plaintiff, in an action for the neglect of the town clerk to prepare and keep an *alphabet* or *index*, in order to show that the damage he sustained, was the result of, and caused by this neglect of the town clerk, set forth in his declaration the following averments or statement. "That upon the occasion of the negotiation and purchase of the premises by the plaintiff, and before completing the same, and for the purpose of assuring himself that the premises were free from incumbrance, he made an examination of the records of deeds in the town clerk's office, and by reason of there being no alphabet, index or reference pointing to that mortgage deed, or the record thereof, he was caused and led to believe, and did believe that there was no incumbrance upon the same, and that thereupon he completed and closed, on the 31st day of March, 1845, his purchase of the premises." It was held, on general demurrer, that the fact is sufficiently stated that the damage of the plaintiff was the result of, and caused by that neglect of the town clerk.

And it was also held, that it was not necessary to aver in the declaration that the plaintiff made a specific request for the *index* or *alphabet.*

And it was also held, that the words, "debts now due," in the act of 1848, dividing the town of Windsor into Windsor and West Windsor, should be held as synonymous with the word liabilities, whether arising *ex-contractu* or *ex-delicto.*

TRESPASS ON THE CASE, for the default of a town clerk. The declaration was as follows:

" The towns of Windsor and West Windsor, (formerly constituting a sole town by the name of Windsor,) in the county of Windsor, are summoned to answer unto David Hunter of Windsor, in the county of Windsor, in a plea of the case, for that heretofore, to wit, at Windsor, in said county of Windsor, from the month of March, A. D, 1835, until the month of March, A. D. 1841, (during which period said present towns of Windsor and West Windsor constituted in law only one town, by the name of Windsor,) Edwin Edgerton was legal town clerk of said then town of Windsor, duly chosen and acting as such under appointment from said town. And on the first day of May, A. D. 1835, said Edwin Edgerton, being indebted to George Curtis and Edward Curtis in the sum of two thousand dollars, executed and delivered to said George and Edward, his, said Edgerton's, promissory note of that date, for the same sum aforesaid, payable to them or order in one year from its said date, with interest annually. And in order to secure the payment of said note according to its tenor, afterwards, to wit, at said Windsor, on the 10th day of June, A. D. 1835, said Edwin Edgerton and Susan C. Edgerton his wife, executed and delivered to said George and Edward Curtis their deed of mortgage of that date, of certain lands of said Edwin and Susan, in Windsor aforesaid, described in said deed, which was by them signed, sealed and acknowledged, in due form of law, therein conveying to said George and Edward Curtis, the whole and entire title to said lands, conditioned to be void upon the payment of said note, which deed was left by said George and Edward Curtis with said Edgerton, town clerk as aforesaid, for record, and was by him, as such town clerk, to wit, at said Windsor on the 11th day of June, A. D. 1835, duly recorded in the book of record of said then town of Windsor, as by said record, a true and attested copy whereof is here ready in court to be shown, will appear.

But the said Edgerton, then clerk aforesaid, did not then, nor did he ever make or cause to be made, nor was there ever made or kept by any one any alphabet or index or reference pointing to said deed or record thereof, during the period he was town clerk as aforesaid, nor till long after the 31st day of March, A. D. 1845.

And heretofore, to wit, on the 31st day of March, A. D. 1845, the plaintiff, not knowing of the existence of said mortgage deed ·to George and Edward Curtis, negotiated and purchased of Wil-

liam White, then of said Windsor, a portion of the premises and estate embraced in said mortgage deed, said portion being bounded and described as follows, to wit: * · * * * * * said White then holding title thereto, derived by deed of warranty executed by said Edgerton subsequently to the execution of said deed of mortgage to said George and Edward Curtis—and upon the occasion of the negotiation and purchase aforesaid, and before completing and closing the same, the plaintiff, for the purpose of assuring himself and being certain that said portion of said premises was free from incumbrance, made examination of the records of deeds in the town clerk's office of said town of Windsor, and by reason of there then being no alphabet, index or reference pointing to said mortgage deed or the record thereof as aforesaid, the plaintiff was caused and led to believe, and did believe then and there, as well he might, that there was no incumbrance upon said portion of said premises, and thereupon the plaintiff, to wit, on said 31st day of March, A. D. 1845, completed and closed his purchase of said portion of said premises of said White, and then and there, for the consideration of $400, paid by the plaintiff to said White, said White made and executed his deed of warranty of said portion of said premises in said last mentioned deed described, and delivered the same to this plaintiff, which said deed was signed, sealed and acknowledged by said White, all in due form of law, which said deed to the plaintiff was on the 31st day of March, A. D. 1845, lodged in the town clerk's office, in said then town of Windsor, for record, and was therein duly recorded, as by the plaintiff's said deed, here in court ready to be shown, will appear.

And the plaintiff avers, that it was the duty of said Edgerton, as town clerk as aforesaid, at the time of recording of said mortgage deed, to have made; and of every town clerk, successor of said Edgerton, to have made; and of said town at all times to have caused to be made and kept open to inspection and examination, an alphabet or index, or some reference in the form of an index, attached to, or connected with the book of records wherein said mortgage was recorded, pointing to said mortgage and record thereof, whereby the same might be found.

And the plaintiff avers, that had he had notice of said incumbrance of said mortgage to said George and Edward Curtis, he should not have made said purchase, and that he did not know at

the time of making said purchase, nor did he ever know or learn, or suspect the existence of said mortgage, until the commencement of the suit hereinafter named, brought by said George and Edward Curtis for the foreclosure of said mortgage.

And the plaintiff further avers, that afterwards, to wit, at Woodstock aforesaid, on the 13th day of October, A. D. 1845, the note secured by said mortgage remaining unpaid, said George and Edward Curtis commenced a suit by bill in chancery against said Edgerton and wife,—the plaintiff and divers other persons therein named to foreclose said mortgage—made returnable into the court of chancery, to be held at Woodstock, in said county of Windsor on the first Tuesday of November, A. D. 1845, which was duly served and entered in said court, and thereupon such proceedings were had, that at a term of said court held at Woodstock aforesaid, on the fourth Tuesday of May, A. D. 1849, said George and Edward Curtis obtained a final decree in their favor against the plaintiff and the other defendants in said suit, for the amount due upon said mortgage note with the interest, and the costs of said suit, making in all the sum of $3458,32—which sum, together with the accruing interest thereon, the plaintiff, together with said other defendants, was decreed to pay, on or before the first Tuesday of June, A. D. 1850, or be foreclosed of and from all equity of redemption in said mortgaged premises, as by the record thereof, duly authenticated copies whereof are here ready in court to be shown, will appear.

And the plaintiff avers, that by reason of the neglect and default of said Edgerton as town clerk, and of his successors in said office of town clerk, and of said then town of Windsor, in the manner aforesaid, he has sustained great damage. And in order to save the land so by him purchased as aforesaid from the operation of said decree, he (the plaintiff) has been compelled to pay and has paid a large amount, to wit, the sum of $500, and has otherwise been put to great trouble and expense in the premises, to wit, the further sum of one hundred dollars.

Whereby, by force of the statute in such case provided, an action hath accrued to the plaintiff to demand, have and recover of the said towns of Windsor and West Windsor (formerly Windsor) his said damages, sustained by reason of the premises as aforesaid, yet, &c."

To this declaration the defendants demurred.

The county court May term, 1851,—PIERPOINT, J. presiding,— decided that the declaration is sufficient, and rendered judgment for the plaintiff. Exceptions by defendants.

*Washburn & Marsh* for defendants.

The cause of action does not survive against these defendants. The town of Windsor, against which the liability accrued, ceased to exist by the statute of Oct. 26, 1848 ; acts of 1848, p. 8. *Tileston* v. *Newman et al.*, 23 Vt. 421, and no liability for any past matter exists against the new towns thereby created, except such as is specially saved by the statute. The statute saves the liability for *debts*, using the words,—" *debts now due from the town of Windsor*,"—technically implying such operations as derive their binding force from contract, express or implied, and not extending to penalties imposed solely by statute, or to compensations to be made for *torts*, personal in their character, such as are sought to be enforced in this action. A bankrupt's certificate would not bar such claims ; nor would such right of action pass to the assignee in bankruptcy, and no reason exists why the word " *debts*" should receive any other or more enlarged construction in this statute, than in the statutes relating to bankruptcy, or in other analogous statutes.

The omission to index the mortgage was not the neglect of a duty, on the part of the town clerk, for which the town is responsible. It was the duty of the town clerk truly to record the mortgage. Sl. Stat. 415 § 20.

And it has been decided by this court, in the case of *Curtis* v. *Lyman*,* that this requirement was complied with ; that the deed *was truly recorded.* It is difficult for us to conceive how the town can be held liable for the *neglect* of the town clerk to do, what this court has decided *he in fact did.*

*Tracy, Converse* and *Barrett* for plaintiff.

1. Towns are liable for " *neglect*" or " *default*" of town clerks, &c.

Do the matters alledged in declaration show a " neglect " or " default" which will make town liable ? R. S. 89 §§ 29, 30. Slade's Ed. 420.

---

* The opinion in the case of *Curtis* v. *Lyman* was delivered by HALL, J., and follows the opinion of Judge ISHAM in this case.

The statute of 1779 provides that a " book or books with an in-
" dex or alphabet to the same, suitable for registering deeds and
" other evidences respecting title to lands, and a book or books for
" recording the proceedings of town meetings, shall be provided
" by town clerk, &c.    And it is hereby made the duty of the town
" clerk or register truly to record all deeds, &c."

The same statute provides a penalty for a neglect and refusal to
record.   p. 415.

By the Rev. St. it is provided that the town clerk " shall also
" furnish and keep in his office, contained in, or, annexed to, the
" books of record for deeds and other evidences concerning real es-
" tate, a suitable index of reference to every instrument on record
" in such books."   p. 89 § 30. Comp. Stat. 116.

The neglect to procure an " *index or alphabet*" or furnish one,
is distinctly alledged.

It is also alledged that the plaintiff examined the records, to see
what was the state of title.    " Did not find the mortgage to Curtis,
" because there was no index or alphabet."

By means of the neglect to prepare such index, he lost his title,
or was obliged to redeem the Curtis mortgage.

No doubt then, the injury to the plaintiff was occasioned by the
neglect to furnish the index.

That the neglect to furnish the index, is a " *neglect*," is beyond
doubt.    And why will not the town be as liable to pay all damages
arising from this neglect, as any other neglect—as much as neg-
lect to " *record ?*"

The index is practically of as much importance as the record-
ing.   It was so determined in the case of *Curtis* v. *Lyman*, deci-
ded in this court, not reported.

2. Did the division of the town of Windsor, in 1848, annihilate
this claim ? Acts of 1848, No. 7.

The act expressly provides for all debts then due from the town.

The fact that it was an unliquidated claim, can make no differ-
ence.

By the record, " *debt*" as used in the statute referred to, is meant
*liabilities or claims* of every description.   Nothing short of that
could be intended by the Legislature.

If, however, it was the intention of the Legislature to relieve
the town of this or similar liabilities, it was beyond their constitu-
tional power to do so.

The fact that an *action on the case* was prescribed as the remedy in this case, can make it no different from what it would have been, had debt been the action.

It was equally beyond the power of the Legislature in both cases to "*impair*" or abrogate the liability of the town.

Had no provision been made in the act, for the debts and liabilities of the town, they would have remained unimpaired.

The town of Windsor was not *annihilated*, but it was simply *divided*.

The Legislature had no power to dissolve or annihilate the political existence of the town so as to impair the rights of any one.

They did not attempt to exercise any such power.

This question was directly settled in the case of *Stone* v. *Windsor and West Windsor*, last June term of this court.

The opinion of the court was delivered by

ISHAM, J. The questions in the case arise upon a general demurrer to the declaration.

The action is in case upon the statute, in which the defendants are sought to be charged, in consequence of the negligence and default of the town clerk of Windsor, previous to its division by act of the Legislature in 1848.

The particular matter of default or negligence, of which the plaintiff complains, is the neglect of the clerk to make and keep an *alphabet* or *index*, annexed to the book of records, and referring to such deeds or instruments as are on record therein. And for the neglect of the clerk in this particular, this action is brought.

It is insisted by the defendants that it was no part of the official duty of the clerk to make such index, and that in this case, his duties as town clerk were fully discharged, in recording at length upon the records of the town, the mortgage deed of Edgerton and wife to George and Edward Curtis, although he did neglect and omit to enter the same on any alphabet or index, belonging to the book of records. And the question presented on this demurrer is, whether that is an official neglect on the part of the town clerk, for which the town is responsible.

The act of 1797, Slade's Comp. 414, Sec. 20, provides "That a "book or books *with an index or alphabet to the same*, suitable for "registering deeds and other evidences of title to lands, and a

"book or books for recording the proceedings of town meetings, "&c. shall be kept in each town in this State, and which are to "be provided by the clerk, at the expense of such town, and it is "made the duty of the town clerk truly to record all deeds and "conveyances, writs and executions, where by law it becomes "necessary." The intention of the Legislature in these provisions is very evident, and it is the duty of the court to give such construction to the act as will carry such intention into effect.

Two different set of books are to be kept; one exclusively for recording evidences respecting titles to lands, *with an index or alphabet to the same*, the other for recording the proceedings of town meetings, &c. and with which no index is required. It may with propriety be asked, for what purpose is the clerk required to procure an alphabet or index, in connection with the book of records for recording evidences of title to real estate. Certainly it was not for the purpose of effecting *constructive notice* of the execution and record of deeds, for that object is accomplished by recording the deeds at length upon the records, although there has been a neglect and omission to index or alphabet the same. This was so ruled by this court in the case of *Curtis* v. *Lyman*, on a bill of foreclosure brought on this same mortgage deed; and the plaintiff and others, who subsequently became interested in the premises included in the mortgage deed, were charged with constructive notice thereof, and their title was held subject to that incumbrance.

Evidently, therefore, that whole provision is a singular instance of idle legislation, if the Legislature did not intend that the *index or alphabet* should be kept in each town, for the definite object and purpose of furnishing an easy and accessible facility, by which any person in the exercise of reasonable diligence, can discover and obtain *actual notice* of the existence of any deed, or mortgage, or evidences of title to real estate thereon, so that all persons who may become purchasers thereof, or who may wish to make advances on such security, may obtain actual knowledge of the title and condition of the property. That such an index or alphabet is of practical importance, that it contributes, and is even rendered essential, as a facility for such discovery and notice, must be within the experience of every one conversant with such records. And it is not to be presumed, that such an important facility for the discovery of the true condition of real estate was overlooked or disregarded by the Legislature.

The act, therefore, was designed to effect two objects, in the first place, providing the means, and furnishing facilities for the discovery of, and obtaining *notice in fact* of such deeds, mortgages and evidences of title, as are placed on the records. And in the second place, to furnish the proper evidences of constructive notice, when all means before provided, have failed in giving actual notice; and when an injury has been sustained by any one for a neglect in either respect, the town is liable under the statute.

The statute imposes the duty upon the town clerk to record all deeds, conveyances, writs and executions, and to keep *such books* within his town, and to record the proceedings of town meetings. It is true that in the specific enumeration of matters to be recorded, no mention is made of the index or alphabet. But the general provision is in these words, "It is made the duty of each town "clerk in this State, to keep *such books* within his respective town." The words "*such books*" evidently refers to all *those* which it was made the duty of the town clerk to procure at the expense of the town. And in specifying those books, the *index or alphabet* is particularly mentioned.

On this subject the intention of the Legislature is too obvious to be mistaken, and we conceive it would be a great departure from judicial duty to defeat that intention by an illiberal or technical construction. To carry into effect an intention so manifestly spread upon the face of the act, the court, if necessary, would be warranted in departing from the ordinary meaning and use of words, and would disregard the grammatical construction, for the object of the act is salutary, and necessary for the safety of those who are interested in the evidences of title to real estate.

We have no hesitancy, therefore, in deciding that it was the duty of the town clerk, to provide such an *alphabet or index*, and to keep and preserve the same for inspection and use, with the same truthfulness and care, that he is required to exercise in keeping the books of record.

To enable the plaintiff, however, to sue for such neglect, it must appear that he has sustained a damage thereby, or in other words, it must appear that the neglect to keep an *alphabet or index*, was the cause of the damage he has sustained, and as this matter arises upon demurrer, such averments should be made in the declaration.

The declaration contains the following statement of facts, and

which are admitted by the demurrer; that the mortgage'deed of Edgerton and wife, to George and Edward Curtis, was executed and recorded on the 11th day of July, 1835, but that the clerk has never made, and kept for inspection and examination an alphabet or index, referring to the deed or its record, until after the plaintiff had become a purchaser of those premises; and that as such purchaser, he never had actual knowledge of the existence of that incumbrance, until the bill in chancery, to foreclose the premises on the Curtis mortgage, was served upon him. It is also stated in the declaration, that on that bill a decree was obtained, and that to protect his property under his purchase, he has been compelled to pay and advance the money for which, as damages, this suit is brought. In the statement of the plaintiff's cause of action, in his declaration thus far, we find admitted by the demurrer, the neglect of the clerk to make and keep an alphabet or index to the book of records, on which is recorded the evidence of title to real estate; and also, the damages which the plaintiff has sustained, in consequence of not having *notice in fact* of the existence of the Curtis mortgage. In order, therefore, to show that the damages which the plaintiff has sustained, *was the result of, and caused by this neglect of the town clerk,* the declaration contains the following averments or statement: " That upon the occasion of the negotia- "tion and purchase of the premises by the plaintiff, and before " completing the same, and for the purpose of assuring himself " that the premises were free from incumbrance, he made an ex- " amination of the records of deeds in the town clerk's office, and " by reason of there being no alphabet, index or reference, point- " ing to that mortgage deed, or the record thereof, he was caused " and led to believe, and did believe that there was no incumbrance " upon the same, and that thereupon he completed and closed, on " the 31st day of March, 1845, his purchase of the premises."

The sufficiency of these averments and statement, it should be observed, arises upon general demurrer; and it is sufficient, if those facts are substantially stated, which will give a right of action, without regard to the form of statement, for if the statement is informally alledged, that can only be reached by special demurrer. On this demurrer therefore, we think the fact is sufficiently stated, that the damage of the plaintiff was the result of, and caused by that neglect of the clerk. It is not stated that the plaintiff made a

specific request for the index or alphabet. If such a specific request was necessary, it should have been averred in the declaration. But we do not think such a specific request is necessary in any case. The plaintiff had a right to make a personal examination of the record for himself, and he was under no necessity of making known the object of such examination. He possibly might have deemed it imprudent to make such disclosure. And no such duty or obligation rests upon any one; every person has a right to a personal examination of such records, and for that purpose, may call upon the clerk for the book of records, containing the evidences of title to lands, and upon such general request, it is as much the duty of the clerk to submit to his examination, and use the *index or alphabet* to such books of record, as the books themselves. And if he neglects so to do, and damages have resulted therefrom the town is responsible therefor. Upon that part of the case therefore, we think the declaration is sufficient, and sets forth a good cause of action.

Another objection has been urged on this demurrer to this declaration, and equally effecting the right of action. It is insisted that whatever may have been the former liability of Windsor on this matter, that liability was removed and lost by the division of the town under the act of 1848. This we can but feel, is giving rather a severe effect to the operation of that act, particularly as it regards third persons, who were not as inhabitants of the town interested in such division. And that no court would feel disposed to give such effect to the act, unless compelled so to do, by most unequivocal legislation, even if there were no constitutional objections in the way. It is also insisted, that by that division, the corporate existence of Windsor, as it existed when this cause of action accrued, has been lost and its charter vacated; and that with it were lost all claims and causes of action, except such as have been particularly excepted from its operation.

The statute making that division, saves the *liability for debts now due from the town of Windsor* and specifies the manner and proportion to be paid by each town respectively.

In this provision, the Legislature were evidently settling the terms of that division, and disposing of matters that might be in controversy between them after the division was effected. And it is not reasonable to suppose that they were simply providing

the manner in which debts arising *ex contractu* should be apportioned between them, for there may have been, and it is not unreasonable to suppose that there were other liabilities existing arising *ex delicto*, which should be proportionately paid by the respective towns. As claims against the town for neglect in keeping roads in repair, neglect of constables, &c. That the Legislature intended, under that form of expression, to include the whole liabilities of the town of Windsor, as it stood when the division was made, is very apparent. And the words, " debts now due," should be held as synonymous with the word liabilities, whether arising *ex contractu* or *ex delicto*.

That clause of the act, saves all such liabilities of the town of Windsor, as it then stood, from the operation and effect of the division, and those liabilities still rest upon the territory, and inhabitants of Windsor and their successors, the same as if that division had not been made.

We are not therefore, called upon to investigate the question whether for any purpose that division vacated the old charter of Windsor and created two new towns, with new charters, as by an express saving clause the matter for which this suit is brought, is excepted from its operation, and unaffected by the division.

The result is, that the judgment of the county court is affirmed.