TOWN OF BENNINGTON *v.* EDWARD A. BOOTH.

October Term, 1927.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed January 12, 1928.

*Robert E. Healy* for the petitioner.

*Collins M. Graves* and *Henry Chase* for the respondent.

CHASE, J.    The petitioner is seeking to obtain a writ of mandamus to compel the defendant, its town clerk, to discon-

tinue his present method of recording instruments and to recopy all records so made. The defendant is resisting the petition on the grounds: First, that the petitioner's interest in the subject-matter is not such as will entitle it to maintain the action; and, second, that the records as made comply with the law.

The commissioner, who has found the facts for this Court, has reported that the defendant is, and for thirty-nine years last past has been, the town clerk of Bennington; that until the year 1913 he made all his records by copying into books furnished by the town all documents left with him to be recorded; that he did this either with pen and ink or by typewriter; that since then he has made nearly all his records by using the photostatic process; that in so doing photographs of each page of the documents have been made on separate sheets of especially prepared paper; that these sheets, which are called photostats, have been allowed to accumulate until there were enough to make a volume of suitable size and have then been sent to a binder and bound; that the books made in this way have been kept in the town clerk's office as record books and, with knowledge of how they were made, have been paid for by the officials of the town; that the records thus made are all legible, though some are more easily read than others; that there is no reason to believe they will become illegible from causes which would not produce the same effect on records made with pen and ink or by typewriting; that the defendant has been requested by the selectmen of Bennington to stop using the photostatic process and record anew all records so made; and that he has refused so to do.

At the hearing in this Court, counsel for each of the parties produced two volumes of the photostatic records for inspection. From these it is seen that they are well-bound books of convenient size with an index of the instruments recorded. Our attention was particularly called to the absence of any certificate signed by the town clerk or by anyone having authority to sign for him, except one at the end of each volume by which he has undertaken to certify generally to the correctness of all the records in the book.

The defense of lack of interest to maintain this action must be held ineffective. The town is by statute liable to "make good the damages which accrue to a person by the neglect or default of the town clerk." G. L. 3945. Also, see

*Hunter* v. *Windsor*, 24 Vt. 327. While it is true that the writ will not issue where the right is doubtful (*Salisbury* v. *Button et al.*, 97 Vt. 9, 121 Atl. 435; *Sanborn* v. *Weir*, 95 Vt. 1, 112 Atl. 228), it will not be refused because of the existence of another remedy unless that remedy is clear and adequate. 18 R. C. L. 132. The other remedy here suggested is a suit on the clerk's bond if, and after, the town is compelled to make good any damage under G. L. 3945. It is plain that such a remedy might well involve a multiplicity of suits of a nature wholly unforeseen when the amount of the bond was determined. Then, too, this remedy would at best be only temporary and partial, for if the records made by the defendant are invalid, after the town had made good the damages and recovered on the bond, it would still be liable for recurring damages, if any in the future accrued to a person. The records themselves would continue to be invalid.

Mandamus will lie to compel a public officer to perform an official act which is merely ministerial even though the relator has no particular and exclusive right or interest to be protected. *Clement* v. *Graham*, 78 Vt. 290, 63 Atl. 146, Ann. Cas. 1913E, 1208. Nor does the fact that the officer is subject to a penalty for refusal or failure to perform his duty prevent the issuance of the writ. *Com. ex. rel. Schaffer* v. *Wilkins*, 271 Pa. 523, 115 Atl. 887, 19 A. L. R. 1379.

The petitioner's right to maintain this action as a matter of law is a barren one, of course, unless it has, as a matter of evidence, shown itself entitled to the relief sought. The statute does not require the use of any particular method of recording. G. L. 3951. Any method, not otherwise unlawful, whereby a record is produced which has all the characteristics required by law, may be used. New times have brought new methods, and, with the above limitation, the choice of the process is but the "choice of the pen," a detail with which we will not attempt to interfere. See *People ex. rel. Armknecht et al.* v. *Haas*, 311 Ill. 164, 142 N. E. 549.

The case shows that the photostatic copies are all legible. That some are more easily read than others has no effect upon their validity. Records made with pen and ink are well known to differ in that respect. They have perpetuity. Not, to be sure, in the absolute sense of the word for no one can believe that any of our paper records will last forever. But they have

that attribute no less than it is possessed by records kept by a town clerk in handwriting or typewriting. In addition to these essentials, which are mentioned in *Pawlet* v. *Sandgate,* 17 Vt. 619, they afford as much publicity to what is thus recorded as is given to any records in a town clerk's office.

Yet, G. L. 3951 provides that the clerk shall "record at length in books to be furnished by the town," and it is said that this has not been done. It is plain that the clerk has recorded at length and that the materials he provided, used, and the town paid for were furnished by the town. If, within the meaning of the statute, the photostatic records are books they lack nothing required by G. L. 3951. That they are books after they are bound is perfectly apparent. Before this has been done they are like the records considered in *Mumford* v. *Wardwell,* 73 U. S. (6 Wall.) 423, 18 L. ed. 756. There it was held that the law requiring grants of lands to be registered or recorded in some book of record was complied with so far as the "book" was concerned when the records were made on loose sheets, although those sheets were not actually bound into volumes until some later date. There can be no doubt that when the statute, which is now G. L. 3951, was enacted the Legislature contemplated the use of a blank book into which records could be copied. No other way was then known. The object of this statute, however, was to provide for the making of records; not for the use of some particular kind of book. It would, we think, be placing the emphasis on a comparatively inconsequential matter to hold that these photostatic records are invalid because they are made on sheets which are destined to be bound rather than on sheets which are already bound. While they are accumulating until numerous enough to be bound the sheets of photostatic records, within the meaning of our statute, constitute the current book of records.

Finally, it is claimed that the failure to attach a certificate to each record renders it invalid; that, even though the statute does not require it, a long-established, salutary custom throughout the State so to do should be noticed and approved. Whatever force this contention might otherwise have is completely dispelled by the holding in *Booge* v. *Parsons,* 2 Vt. 456, 21 A. D. 557, that "the certificate is evidence in support of the record, but not strictly a part of it." This having been early declared by this Court to be the law, no custom, however worth

while, universal or long-continued, can alter it. *Howe* v. *Central Vt. Railway Co.*, 91 Vt. 485-492, 101 Atl. 45.

From our disposition of the case respecting records already made it does not necessarily follow that the writ should not issue to compel the defendant to discontinue recording by the photostatic process. As to this, the precise question presented is whether, by showing that the selectmen have notified the defendant to stop photostatic recording and his refusal to comply, the petitioner is entitled to have the writ issue. The solution of this question involves the right of the selectmen, if any, to give such notice.

The clerk and the selectmen are all elected officers of the town. G. L. 3925. Each has certain duties to perform. Those of the clerk are not made subject to the approval of the selectmen. They have general supervision of the affairs of the town, to be sure, and are charged with seeing to it that duties required of towns and school directors, and not committed to the care of any particular officer, are performed and executed. G. L. 3969. The duty of keeping the records required to be kept in the town clerk's office is, however, committed to the care of the town clerk. G. L. Ch. 173. The selectmen have no express power to require the town clerk, who keeps his records in a lawful manner, to conform to their ideas as to what method he shall use. They had no authority to give the notice above referred to.

But it is urged by counsel for the petitioner that the duty of the town to furnish the books to be used by the clerk, G. L. 3951, carries with it the right to determine what suitable books shall be furnished. However this may be, the reasoning does not apply to the facts in this case. There is no claim or finding that the defendant has ever refused or neglected to use any book the town has furnished. Moreover, his answer shows a judicial admission that he is ready and willing to use in the future whatever books the town does furnish. Consequently, in neither phase of the case is the petitioner entitled to have the writ issue.

*Petition dismissed with costs.*