[Civ. No. 14202.   Second Dist., Div. Three.   Nov. 24, 1943.]

MAME B. BEATTY, as Recorder, etc., Petitioner, v. J. W. HUGHES, as Acting Purchasing Agent, etc., Respondent.

J. H. O'Connor, County Counsel (Los Angeles), S. V. O. Prichard, Assistant County Counsel, and Gerald G. Kelly, Deputy County Counsel, for Petitioner.

Fred M. Cross for Respondent.

Charles A. Sunderlin as Amicus Curiae on Behalf of Respondent.

SHAW, J. pro tem.—In this proceeding in mandate, the petitioner, as the Recorder of the County of Los Angeles, seeks to compel the respondent, as Acting Purchasing Agent of that county, to purchase for her use as recorder a certain machine which she has requisitioned. The respondent has refused to purchase this machine on the ground that petitioner's proposed use of it is not authorized by law. The Supreme Court has twice accepted such a proceeding as a proper mode of obtaining a determination whether the purpose for which an officer seeks to purchase supplies is a lawful purpose (*Kerr* v. *Russell* (1930), 209 Cal. 36 [285 P. 311]; *Kerr* v. *Russell* (1935), 4 Cal.2d 634 [51 P.2d 1095]), and we now follow its example.

The machine sought by petitioner is described in her requisition as "Machine for Photographic Copying," with further details of its capacity and mode of operation. The parties assume, and therefore so do we, although the petition does not directly allege, that petitioner desires and intends to use this machine, if obtained, in the recording of documents filed with her, by photographing such documents and binding the photographic copies so made into books, in lieu of copying the documents into books by hand or with a typewriter. The question for decision therefore is, whether a county recorder may lawfully use such photographic process in performing his duties as recorder.

The powers and duties of a county recorder in this matter are prescribed by section 4131 of the Political Code, which, so far as material here, reads as follows: "He must, upon the payment of his fees for the same, record, separately, in a fair hand, or typewriting, in large well-bound separate books, either sewed books or an insertable leaf, which when placed in the book cannot be removed. . . ." Following this is a list of the various sorts of documents that may be recorded. This provision is "to be liberally construed, with a view to effect its objects and to promote justice" (Pol. Code, sec. 4). But such liberality of construction cannot go beyond the meaning of the words used, where that is clear and un-

ambiguous. (*Pacific Coast etc. Bank* v. *Roberts* (1940), 16 Cal.2d 800, 805 [108 P.2d 439]; *Anderson* v. *I. M. Jameson Corp.* (1936), 7 Cal.2d 60, 67 [59 P.2d 962]; *Seaboard Acceptance Corp.* v. *Shay* (1931), 214 Cal. 361, 366 [5 P.2d 882]; *Mulville* v. *City of San Diego* (1920), 183 Cal. 734, 739 [192 P. 702]; *In re Jessup* (1889), 81 Cal. 408, 419 [21 P. 976, 22 P. 742, 1028, 6 L.R.A. 594].)

The petitioner asserts in her briefs, with much emphasis and reiteration, that section 4131, above quoted, undertakes to prescribe only "the end result to be attained and not the means or methods by which that result is to be achieved," that end result, in petitioner's view, being "that the document shall be accurately, completely and legibly copied and recorded as a permanent document in a book."

In *Cady* v. *Purser* (1901), 131 Cal. 552, 557 [63 P. 844, 82 Am.St.Rep. 391], the court said: "The word 'recorded' in ordinary usage signifies copied or transcribed into some permanent book. In Anderson's Law Dictionary the term 'recording' is defined 'copying an instrument into the public records in a book kept for that purpose by or under the superintendence of the officer appointed therefor.'" In *Federal Construction Co.* v. *Curd* (1918), 179 Cal. 479, 486 [177 P. 473], the court said that official documents are required to be recorded "by copying them at length in a book of records to be kept for such purpose." In *Dougery* v. *Bettencourt* (1931), 214 Cal. 455, 464 [6 P.2d 499], the definition above quoted by us from *Cady* v. *Purser* was quoted and approved. Had the Legislature, in prescribing the duties of recorders, been content to require merely the "recording" of documents, or even their recording "in books," petitioner's argument would, in view of the foregoing definitions of "recording," be more persuasive, and might even prevail. Such were the statutes construed in the two cases cited by petitioner on this point. (*People ex rel. Armknecht* v. *Haas* (1924), 311 Ill. 164 [142 N.E. 549], and *Bennington* v. *Booth* (1928), 101 Vt. 24 [140 A. 157, 57 A.L.R. 156].)

But, as stated in *Cady* v. *Purser, supra,* 131 Cal. at page 558: "The policy of the law in this respect is to afford facilities for intending purchasers or mortgagees of land in examining the records for the purpose of ascertaining whether there are any claims against it, and for this purpose it has prescribed the mode in which the recorder shall keep the

records of the several instruments; and an instrument must be recorded as herein directed in order that it may be recorded as prescribed by law." And in *Caldwell* v. *Center* (1866), 30 Cal. 539, 543 [89 Am.Dec. 131], the court, in holding that a map, made in pencil, not ink, and pasted between the leaves of a book, was not recorded, said: "The Act concerning County Recorders provides that the several instruments entitled to record shall be recorded 'in large and strong bound books, and in a fair, large and legible hand.' The necessary implication from this provision is that the instrument must be *copied* into the proper book of record; and in view of the purpose to be subserved by the recording of the several classes of instruments mentioned in the Act—the making and preservation of accurate and durable official copies of such instruments—a copy made in pencil or other materials that would not permanently remain, would not be within the spirit of the Act." ██ Looking again at the statute, to ascertain what mode of recording it now prescribes, we see that the recorder must "record, separately, in a fair hand, or typewriting, in large well-bound separate books, either sewed books or an insertable leaf, which when placed in the book cannot be removed. . . ." Here it is apparent that the Legislature did not intend to allow the recorder complete freedom of judgment on the manner in which recording should be done. He is limited both as to the mode of copying and as to the nature of the books in which it may be done.

██ Petitioner stresses the use of the preposition "in" in the statutory specification of the mode of copying, arguing that it indicates only the result, and that the preposition "by" would have been used if the means had been intended. However, the preposition "in" has many meanings; one of those attributed to it in the Century Dictionary is, "by means of; with; by; through." The Standard Dictionary also sanctions the use of "in" to express this meaning. We think it is so used in this statute. There has been a similar provision in the recording laws of this state from the beginning, as respondent points out. In the statute of 1850 (Stats. 1850, p. 151) the recorder was required to record documents "by entering them word for word, in a fair hand. . . ." In 1851 (Stats. 1851, p. 199) he was required "to record . . . in a fair, large and legible hand." In 1872, when this provision was

inserted in section 4235 of the Political Code, it required recording "in a fair hand," and these words have been in the corresponding provision ever since, through its transpositions into the various County Government Acts and finally, into section 4131 of the Political Code. In 1905, section 4235 of the Political Code was amended by inserting the words "or typewriting," (Stats. 1905, p. 48) so that the provision regarding mode of recording read as it does now. In 1907, when this provision was placed in its present location in section 4131 of the Political Code, it appeared in its present form, and has remained unchanged ever since. ▪ The word "hand" in this provision of course means "handwriting." When this provision was first formulated, in 1850, it obviously specified the means by which the recording was to be done, for no other means than handwriting was then known. Photography was, indeed, in some use, but as then done it could not conveniently be used for copying documents. Had any recorder attempted so to use it he would have been barred by the statute. ▪ The addition of the words "or typewriting" in 1905 indicates a legislative knowledge of the fact that another means of copying was then available, but it shows no intention to convert the provision from a specification of means to a mere description of result. Indeed, it is a recognition of the formerly existing provision as a specification of means which excluded typewriting and of the necessity of an amendment to permit it. (*Loew's, Inc.* v. *Byram* (1938), 11 Cal.2d 746, 750 [82 P.2d 1].)

▪ In 1893, the County Government Act of 1883 was amended to provide that the books used "may contain printed forms of deeds, mortgages or other instruments of general use" (Stats. 1893, p. 376), and this provision perdures in section 4130 of the Political Code. As already stated, another part of the County Government Act then required recording "in a fair hand." If this provided only for the end result of a legible, permanent record, as petitioner contends, the amendment to permit the use of partly printed books was unnecessary. This, as well as the 1905 amendment already discussed, shows a legislative construction of the statute amended as excluding modes of reproduction other than handwriting. (*Moore* v. *United States F. & G. Co.* (1932), 122 Cal.App. 205, 210 [9 P.2d 562] ; *Loew's, Inc.* v. *Byram, supra.*) Such a construction, while not conclusive,

is persuasive. (*Rutledge* v. *Dominguez* (1932), 122 Cal.App. 680, 684 [10 P.2d 1027].)

The respondent's demurrer to the petition is sustained and the peremptory writ is denied.

Shinn, Acting P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied December 9, 1943, and petitioner's application for a hearing by the Supreme Court was denied January 20, 1944. Edmonds, J., Carter, J., and Traynor, J., voted for a hearing.