KAY KAUFMAN, Appellant, v. ELIZABETH CRIST and CAREL CRIST, Appellees.

(*June* 26, 1956.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Nathan P. Michlin* for appellant.

*George L. Sands* (of the firm of Morford and Bennethum) for appellees.

---

Supreme Court of the State of Delaware, No. 13, 1956.

Bramhall, J.:

Appellant started suit before a Justice of the Peace for damage to her automobile as a result of an accident. Before the institution of suit she filed a statement of facts as required by Title 10 *Del. C.* § 9611(a). The statement was signed by her attorney in the case and not by plaintiff personally. Appellees not appearing at the trial, judgment by default was entered in favor of appellant against appellees. Appellees filed a *praecipe* for a writ of *certiorari* to the Superior Court, stating as their sole exception to the judgment the fact that the statement of facts was signed by appellant's counsel and not by appellant personally. The Superior Court reversed the judgment before the Justice of the Peace and appellant appealed to this court.

The sole question is: Does the language of Title 10 *Del. C.* § 9611(a) permit plaintiff's counsel in a trespass action before a Justice of the Peace to sign the statement of facts required by the statute? If it does not, the judgment of appellant cannot stand, since the Act is mandatory. *Howell v. Eastburn,* 9 *W. W. Harr.* 588, 2 *A.* 2d 899. See 1 *Woolley on Delaware Practice,* Sec. 927, p. 646.

The statute involved, Title 10 *Del. C.* § 9611(a), provides as follows:

"(a) In trespass actions under section 9303 of this title, before the summons is issued, the plaintiff shall file a written statement under hand describing the injury of which he complains."

The word "hand" as used in legal phraseology means signature or handwriting. *State v. Fleming,* 240 *Mo. App.* 1208,

227 *S. W.* 2d 106; *Beatty v. Hughes,* 61 *Cal. App.* 2d 489, 143 *P.* 2d 110. See 1 *Bouvier's Law Dictionary,* 3rd *Ed.,* p. 1416; *Black's Law Dictionary,* 4th *Ed.,* 1951, p. 845. It is clear from the language of the statute that the statement required to be filed by plaintiff must be signed, but it is not clear from a reading of the statute by whom the statement must be signed. There is therefore room for construction. *Nigro v. Flinn,* 8 *W. W. Harr.* (38 *Del.*) 368, 192 *A.* 685.

In Chapter CX of Volume 4, *Laws of Delaware* 1810, page 310, Justices of the Peace were given jurisdiction in actions of trespass *vi et armis,* the statute providing for the trial of such actions in the same manner as actions for debt. In Chapter CXIX of Volume 6, *Laws of Delaware* 1822, page 402, it was provided that no warrant for such action should be issued by a Justice of the Peace "until the person applying for the same shall file with him a statement in writing, specifying the nature of the injury complained of." In the Act of January 30, 1829, *Laws of Delaware* 1829, page 359, it was provided that: "Before a summons or *capias* is issued in such action, the plaintiff or his attorney or agent shall file a written statement under his hand describing the injury complained of." In the *Code of* 1852, the words "or his attorney or agent" appearing after the word "plaintiff", and the word "his" appearing before the word "hand" were deleted from this section.

What was the intention of the Commission on Revision in making this change in language? The purpose of a statement of this nature is to set out those facts upon which plaintiff bases his claim. The question of whether or not this statement is signed by plaintiff personally or by his counsel in the case would not seem to be of importance. Certainly we know of no reason why the legislature should have provided, if it did, that such a statement must be signed by the plaintiff personally. It is clear that the omission of the words "or his attorney or agent", standing alone, would seem to indicate that the Commission on Revision and the legislature of this State intended to revoke the authority of anyone other than the plaintiff in the

action to sign the required statement. But his interpretation does not explain the striking out of the word "his" before the word "hand". If the latter had not been stricken out, the language used by the Commission would have been entirely clear. As it is, the language is somewhat confusing.

In the preface to the *Code of* 1852, it is recited that a Board of Commissioners was authorized to make a revision of the ten volumes of the statutes by virtue of a joint resolution passed by the Senate and House of Representatives of the State of Delaware. It is true that under this authority,—unlike the authority contained in later enactments providing for the compilation of a Code of statutory law,—the Commissioners were authorized to omit provisions which they should consider unnecessary and to vary existing provisions where such would render the general system consistent or more perspicuous or better adapted to circumstances. Undoubtedly, therefore, under the authority of this joint resolution, the Commission on Revision was authorized to make some changes within the limits of the language of the joint resolution. However, it will be noted that the paramount purpose of the preparation of the *Code,* as stated in the preface, was "to revise the public laws of this State now in force and digest and arrange the same under appropriate titles so as to comprise the whole into the smallest practicable volume." It is also significant that the Commission on Revision referring to its authority to make changes in the statutes, said: "The joint resolution gave to the revisers a large discretion in reference to changes of the law, *which has been sparingly exercised.*[1] From a thorough and critical examination of the whole body of our statute law they were impressed with a high sense of its completeness as a system, and of its defectiveness in arrangement and expression. *Their efforts were directed more to simplifying and arranging than to changing the law.*[1]

Apparently, therefore, although under the joint resolution above referred to the Commission on Revision was authorized to

---

[1]Italics ours.

make changes in the statutes, it rarely did so. A casual examination of the statutes incorporated in the *Code* seems to bear out the statement in the preface. In the Chapter of which the section in question is a part, we find a number of instances where changes are made in the language as found in the 1829 statute. All of these changes relate entirely to an effort to clarify and simplify the language of the statute; there is no substantial change in the body of the law. This is illustrated by the following instances: The right to a "trial by freeholders" is changed to read the right to a "referee trial"; the language relating to the right of appeal is simplified by the deletion of certain superfluous words; the provision for trial on appeal is clarified by stating that it shall be the same as in the trial of other cases in the Superior Court; in the language relating to appearance there was a deletion of words not in any way necessary for a proper understanding of the statute.

We think that the change in language made by the Commission of Revision in the preparation of the *Code of* 1852 relating to this section was simply an attempt to clarify and simplify the language of the 1829 statute. We know of no necessity for the requirement of a personal signature under such circumstances. We think that the Commission would not have deleted the word "his" prior to the word "hand" if they had had a contrary intention. The fact that there are numerous changes in language at other places in the chapter but no change in the body of the statute, plus the statement of the Commission as expressed in the preface to the Code, to the effect that very few changes in the law had been made, indicate that it was not the intention of the Commission of Revision or the legislature to provide that a plaintiff must personally sign the statement of facts. We therefore conclude that under the statute it was proper for counsel to sign the statement of facts required by the statute.

The judgment of the Superior Court will be reversed and the judgment of the Justice of the Peace affirmed.