No. 2,431.

THE PEOPLE OF THE STATE OF CALIFORNIA, APPELLANTS, v.
JOEL H. TURNER, RESPONDENT.

CRIMINAL PRACTICE.—After an issue of fact is joined, every step taken for the
purpose of a determination of that issue, up to and including the verdict upon
such issue, must be regarded as "arising during the course of the trial."

IDEM.—MOTION FOR NEW TRIAL.—Any substantial error of the Court, on a
question or matter arising during the course of the trial, is a proper ground for
a motion for a new trial.

IDEM.—A motion for a new trial cannot be based upon any objection to the suf-
ficiency or validity of the indictment, or upon any errors or irregularities
occurring in the proceedings, before issue of fact joined by plea.

IDEM.—APPEAL.—On an appeal from an order refusing or granting a new trial,
on the ground of error or irregularity arising during the course of the trial, the
appellate Court is confined to a review of the proceedings between issue joined
and the rendition of the verdict.

IDEM.—PLEADING.—DEMURRER.—Demurrer to the form or sufficiency of the
indictment, or to the jurisdiction of the Court, must be taken prior to the joinder
of issue of fact by plea.

IDEM.—MOTION TO SET ASIDE INDICTMENT.—The defendant, when not previously
held to answer, must avail himself of errors and irregularities in the pro-
ceedings resulting in the presentation of the indictment, by motion, to set aside
the indictment before plea.

IDEM.—APPEAL FROM FINAL JUDGMENT.—The action of the Court on demurrer,
or on the motion to set aside the indictment, can only be reviewed on appeal
from the final judgment.

IDEM.—MOTION IN ARREST OF JUDGMENT.—Objections which may be presented
by demurrer, may further be made available after verdict, by motion in arrest
of judgment, and the action of the Court on this motion can only be reviewed
on appeal from the judgment.

IDEM.—JUROR.—IMPROPER INFLUENCE.—PRESUMPTION.—A person who has been
sworn on his voire dire and accepted as a juror, and afterwards engages in con-
versation with, or voluntarily listens to the remarks of others on the subject of
the charge, upon which, as a juror, he is to pass, is presumed to have been sub-
ject to improper influence, and, unless it is shown that it failed of effect, the
presumption is against the purity of the verdict.

IDEM.—CHALLENGE TO GRAND JURORS.—A defendant who had not previously
been held to answer, is entitled, on motion, to have the verdict set aside when
it is shown that he had, at the time they were impanelled, a good ground of
challenge to one or more of the grand jurors who presented the indictment.

Per CROCKETT, J.:

CONSTRUCTION OF STATUTES.—Statutes should be so construed as to avoid absurd
results, not within the evil to be remedied, and evidently not within the contem-
plation of the Legislature.

IDEM.—To constitute the offense denounced by the Statute of May 4, 1852, "To
prevent certain officers from dealing in certain securities or evidences of debt,"
there must be some element of mala fides in the transaction.

APPEAL from the County Court of Los Angeles County.

(T.)

The defendant was Mayor of the City of Los Angeles, and was indicted for wilfully and unlawfully receiving, selling and transferring certain scrip and warrants on the treasury of said city, etc., under the Act of the 4th of May, 1852, "To prevent certain officers from dealing in certain securities or evidences of debt," On the trial, the jury brought in a verdict of "guilty," whereupon the defendant moved for a new trial, upon the ground, among others, of the misconduct of one or more of the jurors, and the exercise of improper influence upon their minds, tending to prevent a fair and impartial consideration of the case, which motion was granted by the Court; and from the order granting the same, this appeal was taken by the People.

*Jo Hamilton*, Attorney General, for Appellant.

*Kewen & Howard*, for Respondent.

SPRAGUE, J., delivered the opinion of the Court, TEMPLE, J., concurring :

After an issue of fact is joined in a criminal case, every step thereafter taken for the purpose of a determination of that issue, in the Court where the cause is pending, up to and including the verdict upon such issue, must be regarded as a step or proceeding "arising during the course of the trial," within the meaning of Section 440 of our Criminal Practice Act; hence, any substantial error of the Court upon any matter or question intervening between the joining of issue of fact and the rendition of a verdict thereon, and any misconduct of a juror, who participates in the verdict, from the time he is called in the case and sworn and examined on his *voire dire* up to the final act of rendering the verdict, is proper ground for a motion for a new trial under said section, and on appeal from an order of the Court denying or granting such motion, based upon such grounds, the appellate Court is confined to a review of the proceedings within these limits.

Objections which go to the form or sufficiency of the indictment, or to the jurisdiction of the tribunal presenting

the same, may be presented by demurrer before issue of fact is presented by plea.

Errors and irregularities in the proceedings, resulting in the presentation of the indictment—when the party against whom the same is presented had not, prior to the submission of the charge contained therein to the Grand Jury, been held to answer—any legal ground of challenge to the panel, or to an individual grand juror, can only be made available to defendant before plea by motion to set aside the indictment.

The action of the Court upon the demurrer, and upon the motion to set aside the indictment, can only be reviewed in the appellate Court on appeal from the final judgment.

Objections which may be presented by demurrer before plea, may further be made available after verdict by motion in arrest of judgment; and the action of the Court on this motion can only be reviewed on appeal from the judgment.

Thus, it will be seen, that a motion for a new trial presupposes a sufficient valid indictment, upon which, with sufficient legal evidence in support of its allegations, a legal verdict and a valid, binding judgment may be pronounced. The statute does not contemplate or authorize a re-trial upon an insufficient or invalid indictment; hence, a motion for a new trial cannot properly be based upon any objection to the sufficiency or validity of the indictment, or any errors or irregularities occurring in the proceedings before issue of fact joined by plea to a good and sufficient indictment, the object and purpose of a re-trial being simply to enable the trial Court to avoid the errors and irregularities claimed to have occurred on the former trial to the prejudice of the rights secured to the defendant.

This is an appeal by the people from an order granting the defendant, on his motion, a new trial.

The record brings up the entire proceedings, including the motion of defendant to set aside the indictment, with the grounds thereof, together with the affidavits in support of such motion, which motion was overruled; and this Court, by stipulation of the parties, is solicited to review the entire proceedings, not only upon the appeal from the order grant-

ing a new trial, but also, as upon appeal by the defendant, from a judgment upon the verdict. This we cannot properly do, as, from the record before us, it appears no judgment has yet been pronounced by the Court below against the defendant, from which he could appeal; but, for the purpose of avoiding delay in the administration of the law, we see no impropriety in indicating our opinion of the ruling of the Court upon the motion of defendant to set aside the indictment before plea thereto, as presented by the record; for, if the Court erred in overruling such motion, a future appeal from a judgment which may hereafter be entered upon the verdict already had, or which might, on a re-trial upon the same indictment, be rendered against defendant, would necessarily result in a reversal of such judgment, and the invalidation of the indictment and all proceedings upon the same, by reason of the disqualification of some of the grand jurors who presented it. But, with the view we have taken of the case as now presented, we do not recognize the propriety or necessity of our indicating an opinion as to the form or sufficiency of the indictment under the statute upon which it seems to have been based, as respondent's motion in arrest of judgment does not appear to have been passed upon by the Court below.

In reviewing the order of the Court granting to respondent a new trial, we have carefully examined the record, and find no adequate support for either his first, second, third, fourth or fifth ground of motion. We discover no error in the rulings of the Court, to which defendant excepted, by which defendant could have been prejudiced, nor do we discover any error prejudicial to defendant in the instructions given to the jury, or in refusing to give instructions asked for by defendant. Defendant's sixth, seventh and ninth grounds are not proper grounds on which to base a motion for a new trial. But we are not prepared to say that the affidavits presented by defendant in support of his eighth ground of motion were insufficient to sustain the charge of misconduct of the trial juror, Henry Reed.

It appears by the affidavit of Samuel Kearney, that said juror, Reed, after he had been called and interrogated on

his *voire dire*, as to his qualification as a juror in the case, and before he was finally sworn as such juror, attended and remained at a public meeting in Los Angeles, at which meeting the charge against defendant, upon which Reed had been called to pass as a juror, was under discussion, in which defendant was denounced in most bitter terms. It further appears by the affidavit of Lewis Green, that this same juror, Henry Reed, during the progress of the trial, after the evidence was closed, and before the argument of counsel in the case was closed, talked to the affiant, Green, on his way to the Court, and said, in reference to the case, "that he would not talk about the case, but that his opinion was made, and that nothing could change him;" and by the affidavit of defendant, it appears that he had no knowledge or information of Reed's attending the public meeting referred to by affiant, Kearney, after he had been examined as to his qualifications as a juror, nor of his declarations to affiant, Green, during the trial, until after a verdict had been rendered.

The record does not disclose the mode adopted by the Court in impanelling the jury; but from what does appear it is, we think, sufficiently manifest that as the jurors were called they were separately examined as to their qualifications, and either accepted or rejected, and this course was continued until twelve acceptable jurors had been secured, when the final oath, as jurors, was administered to all at once; that during the process of obtaining the requisite number of trial jurors, and after some had been examined on their *voire dire* and accepted, and before the jury was full, the Court adjourned till the next day, allowing the jurors who had been selected to separate, presumptively with the admonition of the Court, required by Section 394 of the Criminal Practice Act, and with the further and additional admonition, which is very generally and properly given, that they should not listen to conversations between other persons in reference to the case upon which they have been called and selected or sworn as jurors, and that, if other persons should commence a conversation in their presence in reference to the case, the juror should immediately retire

out of hearing, or if so situated, at meals. or otherwise, that he could not conveniently retire, he should inform the parties so conversing that he is a juror, and request them to cease conversation upon the subject, and if such request be not heeded, to withdraw at once, and report the parties to the Court. But whether these admonitions or any admonitions were or were not given to the jurors in this case, on separation, the conduct of the juror, Reed, in attending and remaining at a public meeting, and listening to discussions of the charge contained in the indictment, upon which he had been called to pass as a juror, and denunciations of defendant, may well have been considered by the Court such misconduct as entitled the defendant to a new trial, whether the juror knew the character of the meeting before he went there or not.

A defendant on trial for felony "is entitled to all the protection which the statute intends to secure against any interference with the action of the jury, whether arising from the hostility of personal enemies or popular prejudice;" and when it is shown, either that a juror has engaged in a conversation with others on the subject of the charge upon which he is to pass, or has voluntarily listened to the remarks .of others addressed to himself or to third parties upon matters connected with the charge upon which, as a juror, he has been called upon to pass, then such misconduct is *prima facie* established as to authorize the Court for that reason to set aside the verdict. (*People* v. *Brannigan*, 21 Cal. 340.) "The evil to be guarded against is improper influence, and when an exposure to such influence is shown, and it is not shown that it failed of effect, then the presumption is against the purity of the verdict." (*McCann* v. *The State*, 9 Sm. & Mar. 468; *State* v. *Prescott*, 7 N. H. 288.)

In the present case there seems to have been no effort on the part of the prosecution to rebut the presumption of improper influences exerted upon the juror, Reed, after he had been called, sworn on his *voire dire*, examined and accepted as a juror, resulting from his own misconduct in attending and remaining at a public meeting, where the charge contained in the indictment against the defendant

was the subject of discussion and animadversion. Under these circumstances we do not feel authorized to reverse the order of the Court below granting the defendant a new trial. The order is, therefore, affirmed.

This disposes of the appeal at present before us; but inasmuch as we are requested to indicate an opinion upon the order of the Court below in overruling defendant's motion to set aside the indictment, urged upon grounds which go to the validity thereof as against defendant, we proceed to a brief examination of the question.

. The defendant had not been held to answer prior to the presentation of the indictment against him. By Section 276 of the Criminal Practice Act, "when the defendant had not been held to answer before the finding of the indictment, he may move to set it aside on any ground which would have been a good ground of challenge either to the panel or to any individual grand juror." This motion must be made on arraignment, before demurrer or plea to the indictment, which seems to have been done in this case.

The only ground stated in defendant's motion, available to him under the statute, is his alleged ground of challenge to individual grand jurors, whom he names in his motion, to the number of fourteen, and alleges that each of the persons so named were, at the time they were impanelled as grand jurors, incompetent to act as grand jurors in this case, for the reason that they and each of them had at that time formed and expressed a decided opinion that the defendant was guilty of the charge contained in the indictment, and for which reason he challenges each of said grand jurors, and asked to be permitted to prove the ground of his said challenge, and that the said indictment against him be set aside, which was denied by the Court. It does not affirmatively appear from the record whether or not the ground of challenge to these individual grand jurors, or either of them, was investigated or directly passed upon by the Court. If the Court denied the motion of defendant without giving him an opportunity to substantiate his ground of challenge before the Court, either by an examination of the challenged jurors individually, or by other competent

evidence, the order denying the motion was clearly erroneous; for if, on investigation thereof, it had been established that any one of the grand jurors, who participated in finding the indictment, had, before impanelled on the jury, formed or expressed a decided opinion that the defendant was guilty of the offense charged in the indictment, it was a good ground of challenge under the one hundred and eighty-third section of our Criminal Practice Act, and the indictment should have been set aside on defendant's motion.

It was the defendant's right, on his motion to set aside, to have an investigation before the Court of his ground of challenge of the jurors named, and each of them; and the duty of the Court to afford every facility, by granting process to secure the presence for examination of each of the jurors challenged, and other witnesses, if necessary, and to have a ruling of the Court upon each individual challenge investigated.

From the above intimations, the District Attorney can determine whether a new trial is desirable upon the present indictment.

Order granting new trial affirmed, and cause remanded.


By RHODES, C. J.:

I concur in the judgment, but express no opinion upon any of the points which are not involved in the motion for a new trial, because the opinion would be a mere *obiter dictum.*


CROCKETT, J., delivered the following concurring opinion:

I concur in affirming the order of the County Court granting a new trial, not only on the grounds stated by Mr. Justice SPRAGUE, but also on the additional ground that the Court misdirected the jury to the prejudice of the defendant. The Act of May 4, 1852 (Stats. 1852, p. 64), under which the defendant was indicted, was intended, as its title imports, to prevent the officers of the State, county, city or town governments from "dealing in" certain securities or

evidences of indebtedness of the State, county, city or town. Fraudulent practices had grown up by which these officials, availing themselves of the opportunities afforded by their knowledge of the condition of the public funds under their charge, had grown rich by speculations in public securities, and had been tempted to commit the greatest abuses of official trust by fraudulent issues of State, county, city and town warrants, as a means of enriching themselves or their friends. The Act of May 4, 1852, was intended to prevent these frauds, and to secure, if possible, an honest administration of the public finances. The evil which the very stringent provisions of the Act were designed to remedy, was this abuse of official trust; and as a means to the accomplishment of this end, the officers in this branch of the public service are prohibited by the Act "from purchasing or selling, or in any manner receiving to their own use or benefit, or to the use or benefit of any person or persons whatever," any form of the State, county, city or town indebtedness, over which they have official control, except such as may be issued to them for their salaries; and by the second section they are prohibited, not only from purchasing or selling, but also from being interested in, receiving, transferring, "or causing to be purchased, received or transferred, either in person or by agent, or attorney, or by or through the agency or means of any person or persons whatever, any interest, claim, demand, or other evidence of indebtedness against the State, county, city, or town corportion thereof, either directly or indirectly." By a subsequent section it is provided that the Act shall not be so construed as to prohibit State officers from purchasing or selling county or city warrants, or any county or city officer from purchasing State warrants, or the warrants of any other county or city, or to prevent any State, county or city officer from selling or transferring such warrants or scrip "as he may receive for his services, but none other." It is obvious that the purpose of the Act was to prevent a fraudulent abuse of their official trust by persons having control of the finances of the State, county, city or town governments; and whilst it should be so expounded and enforced as to carry it into

faithful execution, in proper cases falling fairly within its spirit, it is nevertheless apparent that a rigid adherence to the very letter of the statute might in many cases result in great hardship, and seriously embarrass the transactions of public affairs.   By a literal interpretation of the Act, if a member of a City Council, as the executor of a deceased person, should receive in payment of a debt due the State a warrant drawn on the City Treasurer, he would be guilty of a felony, punishable by confinement in the State Prison; or if a trustee of a town should inherit from a deceased relative a demand of any nature against the town, he would be debarred from accepting the inheritance, on pain of thereby becoming a felon.   In like manner a public administrator (who is a county officer) would commit a felony if he took into his possession, and afterwards transferred, in due course of administration, a warrant on the County Treasurer, which came into his hands as assets of the estate which the law made it his duty to administer.   In enacting the Statute of 1852, to prevent official corruption growing out of fraudulent speculations in public securities, it is impossible the Legislature could have intended the Act to apply to such cases as these, the number of which might be multiplied almost indefinitely; and yet, upon a literal construction of the statute, all these cases would fall within its provisions. The rule in construing statutes is to avoid, if possible, such an interpretation of them as would work out absurd results not within the evil to be remedied, and evidently not within the contemplation of the Legislature.   This statute, therefore, must be so construed as to carry into effect the purpose for which it was enacted without involving the absurd results which would necessarily ensue from a literal interpretation of its provisions.   This can only be accomplished by holding that, to constitute the offense denounced by the statute, there must be some element of *mala fides* in the transaction. If one of the officers named in the Act should purchase or sell, either in his own name or in the name of another, for purposes of gain, any of the prohibited securities, or should, either directly or indirectly, be interested, secretly or otherwise, in dealing in said securities for his private emolument,

or to enable some one else to speculate in them on informa-tion derived from him, he would be guilty of the offense which the statute was designed to punish. On principles of public policy, the disbursing agents and others having con-trol of the finances of the State, county, city or town gov-ernments, should not be permitted, either directly or indi-rectly, for their own emolument, or for the benefit of their friends, to speculate in the securities with the management of which they are intrusted as agents and servants of the people. If any such officer should engage in such specula-tion, either on his own account or for the benefit of others, or in any manner whatsoever should seek to make a profit for himself or another in dealing in said securities, he would act *mala fide*, and the offense would be complete. But where there is no fraudulent intent whatsoever, nor any design, either openly or covertly, to make a profit or gain for him-self or another in the transaction, I cannot believe that a public officer who simply receives into his possession, and afterwards transfers for a proper and legitimate purpose, one of the prohibited securities, thereby becomes a felon within the meaning of the statute. In this case there was testimony tending to show that the warrants specified in the indictment were issued to the defendant for the purpose of enabling him to defray certain expenses before then incurred by the city authorities for street improvements, and that the warrants, or their proceeds, were fairly and honestly so applied by the defendant. But, at the request of the prose-cution, the Court instructed the jury to disregard the testi-mony tending to show what disposition was made of the money received for the warrants, and refused an instruction asked by the defendant, to the effect that if the warrants were issued to pay for work done on the streets, and if they were transferred by the defendant for that purpose, and not for his own benefit, he was entitled to an acquittal. In my opinion, the Court erred in giving the former and refusing the latter.

WALLACE, J., expressed no opinion.