[S. F. No. 15552. In Bank.—November 27, 1935.]

WILLIAM M. KERR, as Registrar of Voters, etc., Petitioner, v. H. E. RUSSELL, as Purchasing Agent, etc., Respondent.

Shattuck, Davis & Story for Petitioner.

Everett W. Mattoon, County Counsel, and Fred M. Cross, Deputy County Counsel, for Respondent.

Clarence E. Todd and Warren H. Pillsbury, as *Amici Curiae* on Behalf of Respondent.

THOMPSON, J.—By this proceeding in *mandamus* it is sought to compel the respondent, as Purchasing Agent of Los Angeles County, to purchase the paper, printing, materials and supplies requisitioned by petitioner for the purpose of registering the qualified voters of that county. The controversy arises out of an amendment to section 1094 of the Political Code, adopted by the legislature at its last session.

Section 1 of article IV of the state Constitution, provides in effect that no initiative measure adopted by the people at the polls shall be amended or repealed except by a vote of the electors, "unless otherwise provided in said initiative measure". On November 4, 1930, the people adopted an initiative act for the permanent registration of voters, whereby several sections of the Political Code were amended, including section 1094. Section 11 of the act (Stats. 1931, p. xcviii), provides as follows:

"Any section of this act may be amended by the Legislature, except that no amendment by the Legislature shall provide for a general biennial or other periodic re-registration of voters."

Prior to the legislative session of 1935, section 1094 of the Political Code provided in substance that, commencing with the year 1932, all of the voters of the state should be registered in a new and complete registration thereof. Other sections amended by the initiative measure indicate that such registration was intended to be permanent and that the affidavits of registration were to remain in effect until canceled by the person registered or by the county clerk or registrar of voters for any of several causes enumerated by the act. (See sec. 1106, Pol. Code.)

During the last session of the legislature section 1094 was amended by substituting the year 1936 in the place and stead· of 1932.

The respondent contends that the amendment contravenes the section of the Constitution to which we have referred. He does not contend that the duty to order the supplies is not imposed upon him by law, if the amendment is constitutional. We are of the opinion that the amendment must be held to be a valid exercise of the legislative power. The prohibition of the permissive section of the act is that no amendment "shall provide for a general biennial or other periodic re-registration of voters". The question is, what do the words mean—or, what was the purpose sought by the limiting language? It appears manifest to us that the words mean that no amendment should provide for a general reregistration of voters every two years or for general reregistration of voters every four or six or other fixed period of years or time. The purpose sought to be accomplished by the language was undoubtedly to do away with the system theretofore existing of requiring a reregistration of voters every two years. Aside from effecting this object, the act plainly indicates that the power of the legislature should remain unabridged. As amended, a new and permanent registration is required, commencing with the year 1936. No doubt the legislature considered, as it is empowered and authorized to do, that conditions were of such a character that the general welfare and the purity of subsequent elections would be served by the reregistration of the voters, commencing with next year. We cannot assume from the present amendment that the legislature will periodically amend the section of the law so as to defeat the purpose of the limitation. This we would have to do in order to lend weight to respondent's argu-

ment.   On the other hand, if we were to sustain the contention of respondent, it would mean, if carried to its limit, that the legislature would be without power ten, twenty or even fifty years from now to provide for the permanent reregistration of voters regardless of the conditions then existing.   In view of this conclusion the peremptory writ ought to issue.

It is ordered that the peremptory writ of mandate issue as prayed.

Seawell, J., Shenk, J., Curtis, J., Conrey, J., Waste, C. J., and Langdon, J., concurred.